25600. PYE v. STATE HIGHWAY DEPARTMENT et al.

SUBMITTED JANUARY 14, 1970—DECIDED JUNE 8, 1970.

Durwood T. Pye, *pro se, P. Russell Tarver,* for appellant.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Richard L. Chambers, Assistant Attorney General, Marshall Sims, E. Lewis Hansen, E. J. Summerour,* for appellee.

GRICE, Justice. This appeal is from a judgment in a condemnation proceeding striking all of the property owner's pleadings except as they relate to issues of value.

The proceeding was brought in the Superior Court of Fulton County by the State Highway Department against 0.413 acres of land and Durwood T. Pye, the owner of the land.

The condemnation petition, in substance, alleged as follows: that the proceeding was brought under Georgia Laws 1961, page 517, as amended, to acquire by condemnation fee simple title to the land for a right of way for a "certain State-aid road (Limited access highway) . . . known as Project No. F 056-1 (12), said highway being located as shown on a map and drawing on file in the office of the State Highway Department"; that the Department stands ready to pay just and adequate compensation for the right of way described in the attached declaration of taking and has deposited in the court estimated just compensation ascertained in accordance with Georgia Laws 1961, page 517, as amended; that the right of way and/or rights described in the declaration of taking are for State-aid public highway purposes upon the tract of land; that the taxing authorities of the State, county and city may have some claim against the land on account of unpaid State, county and city taxes and are made parties defendant.

Attached to the condemnation petition is an order of the Director of the State Highway Department which avers, in material part, that the Department has laid out and determined to construct a certain State-aid road or highway as a part of the

State highway system, known and designated as Project No. F 056-1 (12) Fulton County, described more fully on a map and drawing on file in the office of the Department; that in order to maintain the projected schedule of road construction it is necessary that the right of way be acquired without delay; that the parcel of right of way herein described and listed (as *Parcel* 37, *Owner* Durwood T. Pye, *Taking* 0.413 acres, *Annex* 1 & 1-A) and shown on annexes to this order, is essential for the construction of said project; and that therefore, it is found by the Director that the circumstances are such that it is necessary that the right of way be acquired by condemnation under the provisions of Georgia Laws 1961, page 517, as amended, and is ordered that the Department proceed to acquire the title in the lands described by condemnation under said Act, and the Attorney General and his assistants are authorized and directed to file condemnation proceedings, including declaration of taking, to acquire it and to deposit in the court the sum estimated as just compensation. This order was signed by the Director of the Department. It was attested by a named person, as Secretary and Treasurer of the Department. This same officer also certified that the order is a true and correct copy of the order entered by the Director in reference to the matters therein described and that the original is on file with the Department.

Attached to the Director's order is a description of the land sought to be condemned and maps or drawings showing a portion of the project which includes the subject property.

The declaration of taking attached to the condemnation petition recited essentially the following: that the Director has entered the order above described; that the Department has caused an investigation and report to be made by a land appraiser upon which to estimate the sum of money to be deposited in the court as just and adequate compensation for the right of way above referred to; that in consequence of the sworn appraisal and report the Department estimates $19,000 as the just and adequate compensation to be paid for the said right of way and now deposits said sum in the court to the use of the persons entitled thereto; and that therefore, the Department under authority of Georgia Laws 1961, page 517, as amended, hereby

declares that the property and/or rights described in the Director's order is taken for State-aid road purposes. This declaration was signed by the Attorney General and several Assistant Attorneys General "by authority of the Director" of the Department.

Also attached to the condemnation petition is the affidavit of an appraiser. It concludes with the statement that he had determined that just compensation is $19,000.

The Department also filed a motion for possession of the property it sought to condemn.

The property owner filed an equitable complaint (case number 43979) with amendments, seeking to have the condemnation proceeding declared void. He also filed an answer to the condemnation proceeding (case number 43838) with amendments, an answer to the Department's motion for possession, and interrogatories to the Department. It is not necessary to set forth these pleadings here, since they will be dealt with in the appropriate divisions of the opinion.

Upon the hearing considerable evidence was adduced. Testimony as to the location and limits of the right of way for the project in question, No. F 056-1 (12), was given by two engineering officials of the Department. Documentary evidence included maps and drawings, minutes of meetings of the State Highway Board, a resolution of that Board, affidavits of the property owner, and answers of the Department to his interrogatories.

The condemnation proceeding and the equitable complaint were ordered consolidated for purposes of the order and judgment and the appeal.

In its judgment the trial court granted the Department's motion to strike the property owner's amendment to his complaint seeking damages; granted the Department's motion for possession of the property, conditioned on the outcome of this appeal; made findings of fact and conclusions of law; and dismissed all of the property owner's amended pleadings except insofar as they relate to questions of value.

The trial court certified this judgment for immediate review.

This appeal involves numerous issues. There are 27 enumerations of error, with many sub-enumerations and contentions for their support. In treating them, related issues will be grouped and discussed together wherever possible.

■ Initially, the appellant property owner enumerates as error the holding that the proposed amendment to Article I, Section III, Paragraph I of the State Constitution (*Code Ann.* § 2-301), set forth at Georgia Laws 1960, page 1225, became a part of the Constitution.

This proposed amendment provided an exception to the requirement that private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid, where the property is taken for road purposes, in which instance compensation is not required to be paid *until* finally determined as provided by law. It also recites that such payment is subordinated to bonded indebtedness.

The property owner contends that this amendment never became effective and therefore that Georgia Laws 1961, page 517, as amended, under which this condemnation proceeding is brought and which purports to authorize the taking of private property for public purposes without first paying compensation, is unconstitutional.

He maintains that the language used in submission of this proposed amendment to the voters was misleading; that it did not include the gist of the amendment; and that it was insufficient to identify the amendment, to show its character and purpose, or to enable the voters to intelligently pass upon it.

The ballot for this amendment read "For [Against] ratification of amendment to Constitution so as to provide for the payment for taking or damaging private property for public road and street purposes."

The property owner argues that Article I, Section III, Paragraph I already provided for payment and that this proposed amendment, instead of providing for payment as stated on the ballot, in fact took away the requirement that compensation be paid before the taking and made the payment subordinate to bonded indebtedness, but that the submission language mentioned neither of these features.

(a) This contention as to the form of the ballot cannot be sustained.

When the submission in question took place in 1960 the State Constitution provided that "The General Assembly, in the resolution, shall state the language to be used in submitting the proposed amendment." Art. XIII, Sec. I, Par. I, ratif. Nov. 6, 1956 (*Code Ann.* § 2-8101). No requirements or standards as to the language to be used are stated.

This same provision of the Constitution also required that if the proposed amendment was general, as here, it was "to be published *in full* once each week for three consecutive weeks immediately preceding the date of the election at which such proposed amendment is submitted, in one newspaper of general circulation in each Congressional District of the State." (Emphasis supplied.) Art. XIII, Sec. I, Par. I, supra.

Like questions to the one at bar have been before this court under a similar provision in the 1877 Constitution, and in each it held that the submission language was sufficient.

In this connection, this court said in *Cooney v. Foote,* 142 Ga. 647, 654 (88 SE 537, AC 1916B 1001) (one Justice concurring specially): "Article 13 of the [1877] Constitution did not prescribe the details relating to the manner of submission, but left them to the wisdom of the legislature. It did provide for the publication of the proposed amendment, as a means of giving wide and extensive information of the exact nature of the proposed change or addition. It was never contemplated that the entire proposed amendment should be printed on the ballot. It was within legislative discretion to adopt some formula by which the voter would express his assent or dissent to the proposed amendment. The formula prescribed by the legislature was not intended for the purpose of informing the voter as to the full contents of the amendment. On the contrary, the formula was intended as the declaration by the voter of his approval or disapproval of the amendment which had been published in each congressional district. The amendment was submitted to the elector, and the formula prescribed was simply to elicit his expression as to whether or not the proposed amendment should become a part of the organic law. The formula

written or printed on his ballot was but the legislative means of obtaining his expression upon the published proposal; and when he adopted the formula he indicated his vote upon the whole amendment which was submitted, and not a mere part."

In this same connection, it held in *Goolsby v. Stephens,* 155 Ga. 529, 540 (117 SE 439) (two Justices dissenting upon another ground) : "Section 3 of the Act proposing this amendment [to the 1877 Constitution] provides that the entire amendment should be submitted to the electors of the State for ratification or rejection. It was not necessary that the entire amendment should have been printed on the ballots. The reference on the ballots to the proposed amendment is to inform the voters what they are voting for as an amendment to the Constitution; *and such reference is sufficient when it contains enough to enable the voters to ascertain for what amendment they are voting.* When this is done, the voters can be fully informed as to its full provisions by looking to the proposed amendment. What is adopted as an amendment to the Constitution is not what is printed on the ballots, but what is contained in the proposal for amending the Constitution. The submission of the proposed amendment was sufficient." (Emphasis supplied.)

In *McLennan v. Aldredge,* 223 Ga. 879, 882 (159 SE2d 682), the proposed amendment involved a tax for educational purposes. The plaintiff contended that the submission language misled the voters concerning the nature, character and scope of the proposed tax. The opinion quoted from the *Cooney* and *Goolsby* cases, supra, and cited *Townsend v. Smith,* 144 Ga. 792, 796 (87 SE 1039). It then said that there "the ballot was sufficient under the above quoted decisions of this court and the prevailing provisions of the 1877 Constitution . . . to inform the voters for what amendment they were voting." P. 883. It distinguished *Seago v. Richmond County,* 218 Ga. 151 (126 SE2d 657), upon the ground that it involved an essentially different amendatory procedure. Georgia Laws 1939, page 305, the basis for that procedure, was nullified by the adoption of the 1956 amendment to Article XIII, Section I, Paragraph I of the Constitution (*Code Ann.* § 2-8101), supra.

Returning to the case now before us, we conclude that the

ballot for this amendment is not subject to the attack made. It was sufficient to enable the voters to ascertain that they were voting upon a proposal to amend the Constitution with reference to a feature of payment for taking or damaging private property for road or street purposes, the full text of which had been published three times in each Congressional District.

(b) In this same enumeration the property owner also insists that the provision in the amendment to the effect that compensation for private property taken or damaged shall be subordinate to bonded indebtedness of the condemning authority constitutes denial of the due process and equal protection guaranties of the United States Constitution.

In our view he lacks standing to make this contention. The estimated amount of compensation for taking his property was in fact paid into court. He has not been injured by the subordination provision and therefore does not show any "infringement upon his rights" due to such provision. *Ga. Music Operators Assn. v. City of Atlanta,* 183 Ga. 794 (190 SE 32).

This enumeration is without merit.

■ The property owner raises the issue as to whether, in a condemnation proceeding under Georgia Laws 1961, page 517, as amended (*Code Ann. Ch.* 36-13), he may defend upon grounds of illegality in the taking or want of essentials, or whether his sole remedy is to seek "just and adequate compensation."

We unhesitatingly hold that the property owner in this situation is not restricted to seeking just and adequate compensation. The 1961 Act, as amended, specifically recites the defenses available to a property owner in a condemnation under the Act and outlines the method of asserting those defenses. Section 3 of the Act provides: "Upon proper pleadings and evidence, under the applicable rules of law, the judge of the superior court shall have the authority to set aside, vacate, and annul the said declaration of taking, together with any title acquired thereby . . . The power of the Court in this respect shall not be construed as extending to a determination of questions of necessity, but there shall be a prima facie presumption that the property condemned is taken for and is necessary to the public use provided for in this Act; and such power shall be restricted to the

following questions: (a) Fraud or bad faith . . . (b) The improper use of the powers of this Act, such as are not contemplated by the provisions of the Act; (c) The abuse or misuse of the powers of the Act; (d) Such other questions as may be properly raised under the provisions of section 8 of this Act [Code Ann. § 36-1308], including the question of whether or not the Act has been invoked in some respect beyond the privileges conferred by the Act, or by an unauthorized authority, agency, or governmental subdivision." Ga. L. 1961, pp. 517, 520, as amended (Code Ann. § 36-1303). Section 8, referred to above, provides that "All questions of law arising upon the pleadings or in any other way arising from the cause . . . may be passed on by the presiding judge . . ." Ga. L. 1961, pp. 517, 526 (Code Ann. § 36-1308). See also, State Hwy. Dept. v. McCurdy, 217 Ga. 731 (124 SE2d 630); State Hwy. Dept. v. Smith, 219 Ga. 800, 808 (136 SE2d 334).

In fact, in a condemnation under the 1961 Act, as amended, the property owner is required to set up all available defenses in the condemnation proceeding instead of raising them by a separate suit. State Hwy. Dept. v. McCurdy, 217 Ga. 731, 733, supra.

Actually, in the instant condemnation the property owner raised many issues, over and beyond just and adequate compensation. Each of them was considered and passed upon by the trial court before entry of the judgment dismissing those not relating to value. Therefore, the property owner was not deprived of the opportunity of making any defenses.

■ A controlling issue relates to the trial court's holding that the Director of the State Highway Department, rather than the State Highway Board, has the power with respect to the exercise of eminent domain under the 1961 Act, as amended.

At the outset of our discussion of this issue, we quote in the order of their enactment or ratification, the provisions of statutes and the Constitution relevant to this issue.

(i) Code § 95-1724: "The State Highway Board, acting for and in behalf of the State, is hereby authorized and empowered to exercise the right of eminent domain in the condemnation of rights of way and property thereon for the use of the system of State highways . . ."

(ii) *Code Ann.* § 95-1715: "... said Highway Department is hereby authorized and empowered to condemn and acquire rights of way for maintaining, improving, and constructing said State-aid roads. . ."

(iii) Georgia Laws 1961, pages 517, 520, required that in a condemnation proceeding under that Act there be annexed to the declaration of taking "A certified copy of a *resolution by the State Highway Board* . . . finding that the circumstances are such that it is necessary to proceed in the particular case under the provisions of this Act and specifically authorizing condemnation under the provisions of this Act." (Emphasis supplied.)

(iv) Georgia Laws 1963, pages 3, 7 (*Code Ann.* § 95-1602(e)), reorganized the State Highway Board, and created the office of Director, "who shall be the chief administrative officer of the . . . Department, and who shall possess and exercise all power and authority of the . . . Board when it is not in regular or called sessions, with full authority to execute contracts and all other undertakings. . ."

(v) Georgia Laws 1963, pages 124-125 (*Code Ann.* § 36-1303), amended Georgia Laws 1961, page 517 (ii, supra), by *substituting* a certified copy of an *order of the Director* for the certified copy of a resolution of the Board, and specified that "The Director of the . . . Department . . . shall have, possess and exercise all power and authority conferred upon the . . . Board . . . in" the 1961 Act, supra.

(vi) Georgia Laws 1963, page 665, proposed an amendment to the Constitution which included the following language: "The Board shall elect a *Director* of the . . . Department *who shall be the Chief Executive Officer* of the . . . Department . . . *The General Assembly shall define by law the powers, duties,* qualifications and compensation of the Board and *of the Director* . . ." (Emphasis supplied.) This proposed amendment was ratified November 3, 1964. Art. V, Sec. XI, Par. I (*Code Ann.* § 2-3506).

(a) As to this issue of whether the Director has the power with respect to the exercise of eminent domain, the property owner contends in essence that Georgia Laws 1961, page 517,

as amended, does not confer the power of eminent domain upon the Director, but merely gives him authority as to procedure; that the only laws conferring the power to condemn for State-aid roads are *Code Ann.* § 95-1715 and *Code* § 95-1724 (i, ii, supra), which confer such power on the Board; and that Georgia Laws 1963, page 124 (v, supra), should not be construed to confer such power on the Director by implication, since it was expressly conferred on the Board by *Code* § 95-1724.

This contention is not meritorious.

In our view, consideration of the 1963 amendment to the 1961 Act (v, supra), together with the 1963 Act reorganizing the Highway Board (iv, supra), and the Constitutional amendment (vi, supra) proposed during that same 1963 session of the legislature, leads to the firm conclusion that the General Assembly intended the Director to have the authority to initiate condemnation proceedings under the 1961 Act, as amended.

The Constitutional amendment provided that the General Assembly should define by law the powers and duties of the Director. Art. V, Sec. XI, Par. I (vi, supra). The Act reorganizing the Highway Board made the Director "chief administrative officer" of the Department and gave him *all* power and authority of the Board when it is not in regular or called session. Ga. L. 1963, p. 3 (iv, supra). The 1963 Act amending the 1961 Act, besides providing that the Director shall have all the power and authority conferred on the Board in the 1961 Act, substituted an order of the Director for the previously required resolution of the Board. Ga. L. 1963, p. 124 (v, supra).

Such order of the Director *is the authorization for the particular condemnation.* As to it, section 3 of the 1961 Act, as amended by this 1963 Act, requires that there be annexed to the declaration of taking in a condemnation proceeding under such Act, "A certified copy of an order by the Director of the State Highway Department of Georgia, finding that the circumstances are such that it is necessary to proceed in the particular case under the provisions of this Act, *and specifically authorizing condemnation under the provisions of* this Act." (Emphasis supplied.) Ga. L. 1963, pp. 124-125 (*Code Ann.* § 36-1303(6)).

By its requirement in the quoted provision, of an order of the

Director authorizing condemnation, the General Assembly gave him the power of decision and determination under this Act, and undoubtedly intended that he, rather than the Board, have the power to order condemnation on behalf of the Department under the Act. Whether this power is called the "power of eminent domain" or "power with respect to the exercise of eminent domain," the General Assembly has placed it in the Director insofar as the 1961 Act, as amended, is concerned.

In *State Hwy. Dept. v. Smith,* 219 Ga. 800, supra, this court (one Justice concurring specially) sustained condemnation pleadings under the 1961 Act, as amended, where, as here, the Director, not the Board, made the determination to condemn. See also, *State Hwy. Dept. v. Respess,* 111 Ga. App. 421 (142 SE2d 73); s.c. 111 Ga. App. 787 (143 SE2d 434).

(b) The property owner, however, attacks the constitutionality of Georgia Laws 1963, page 124 (v, supra). He urges that the provisions of this statute which authorize the Director, instead of the Board as originally provided by the 1961 Act, to proceed under the 1961 Act are inconsistent with the 1964 Constitutional amendment (Art. V, Sec. XI, Par. I; *Code Ann.* § 2-3506) (vi, supra), which states that the Director shall be the "Chief Executive Officer" of the Department.

He maintains that the amendment's provision that the General Assembly shall define the powers and duties of the Director contemplated administrative type powers and duties only, and not legislative, governmental and discretionary power, which the 1963 statute purports to authorize.

Also, he urges that the portion of the 1963 statute which recites that the Director shall have all power and authority conferred upon the Board by the 1961 Act violates such amendment in that the latter provides for separate and distinct power and authority of the Board and of the Director; and that the General Assembly cannot delegate to the Director the power of the Board.

Neither of these contentions is valid. The aforesaid amendment to the Constitution provides that the General Assembly shall define the powers and duties of the Director. The two

1963 Acts above discussed did just that, within the limits of that mandate.

It is of no consequence that the 1963 statutes came before the 1964 ratification of the amendment to the Constitution, as there is no conflict between them. See *McCollum v. Bass*, 201 Ga. 537, 538 (40 SE2d 650).

(c) Insofar as the issue of power is concerned, the property owner further insists that Georgia Laws 1968, page 1055, which undertakes to authorize the Board to delegate its authority to the Director, is in violation of the above 1964 amendment to the Constitution (Art. V, Sec. XI, Par. I; vi, supra) in that under the latter the Board may not delegate its powers to the Director, nor may the General Assembly authorize the Board to do so.

The pertinent part of such Act recites that the Director "shall be the chief administrative officer of the . . . Department, and . . . shall possess and exercise all power and authority of the . . . Board *delegated to him by said Board* when it is not in regular or called sessions . . ." (Emphasis supplied). Ga. L. 1968, pp. 1055, 1056.

We are unable to ascertain the origin of the italicized language, which is what is complained of here. As to this section, the 1968 Act states only that it is amending Georgia Laws 1950, page 62, as amended, by deleting the last sentence in subsection (e) of section 4 (*Code Ann.* § 95-1602(e)), "so that when so amended said subsection (e) of section 4 shall read as follows." However, in the restatement of that subsection with the sentence deleted, the above italicized language appears for the first time. There is no indication whatsoever that the General Assembly intended to add these words, and we will assume that they were inadvertently included and therefore are of no effect. This conclusion is preferable to ruling that the Act is unconstitutional due to such words. "It is the duty of courts to put such construction upon statutes, if possible, as to uphold them and carry them into effect." *Lamons v. Yarbrough*, 206 Ga. 50 (2) (55 SE2d 551).

In this same connection, the property owner urges that the resolution of the Board of May 16, 1968, purporting to delegate all of its power to the Director when it is not in session and

affirming his prior actions, is an unlawful and ineffective delegation of power to the Director, as only the General Assembly, not the Board, can delegate the power of eminent domain.

This resolution is of no consequence here. The General Assembly, by virtue of the aforesaid 1964 amendment to the Constitution, was vested with authority to define and fix the powers and duties of the Director, and did so by the two 1963 Acts, supra. By those Acts he already had all of the powers of the Board when it was not in session, and his order of necessity was required to authorize condemnation under the 1961 Act, as amended. No resolution by the Board, even if effective, was necessary to invest him with such power.

(d) The 1961 Act, as amended, in no way repeals the laws (*Code Ann.* § 95-1715 and *Code* § 95-1724) conferring the power of eminent domain on the Board.

We hold, for the reasons stated in this division, that the Director of the State Highway Department of Georgia was authorized to exercise the power of eminent domain so as to acquire the title to private property by the instant condemnation proceeding brought pursuant to the 1961 Act, as amended.

This holding is controlling upon all of the enumerations and contentions relating to the power of eminent domain under this Act, as amended, including the necessity for any action by the Board to authorize this condemnation, the validity of the Director's order of necessity, and the signing of the declaration of taking by the Attorney General and his assistants "by authority of" the Director.

■ The property owner urges that the condemnation proceeding is unlawful in that no certified copy of the Director's order of necessity to proceed under the 1961 Act, as amended, is attached to the petition, as required by section 3 of such Act. For support of this position he asserts that this document is allegedly certified by the signature of "M. W. Williams, Secretary and Treasurer State Highway Department of Georgia," and that there is no such office or officer created by statute and thus the certificate is not by an officer of this State as required by *Code* § 38-601. This section provides, in material part, that "The certificate . . . of any public officer, either of this

State or any county thereof, shall give sufficient validity or authenticity to any copy or transcript of any record, document, paper of file, or other matter or thing in their respective offices, or pertaining thereto, to admit the same in evidence."

This contention cannot prevail.

A 1950 Act (Ga. L. 1950, pp. 62, 66; *Code Ann.* § 95-1606) created the office of treasurer of the Department and provided that such officer was to be appointed by a majority of the Board. A later Act (Ga. L. 1963, pp. 3, 7; *Code Ann.* § 95-1602 (d)) reorganizing the State Highway Department requires that "the Board [by majority vote] shall also elect a secretary . . ." The Board on November 6, 1961, by resolution, named M. W. Williams Secretary and Treasurer of the Department. As such he was a public officer within the purview of *Code* § 38-601, supra, and thus was authorized to provide the certification for the document in question.

■ Several enumerations assert that this condemnation proceeding cannot be maintained under the 1961 Act, as amended, because of failure of the Department to comply with the conditions precedent for use of that Act, as set forth in section 1 thereof.

Section 1 of the 1961 Act provides in material part as follows: "Whenever the State . . . or any division, department, or branch of the . . . State . . . or any county . . . shall desire to take or damage private property for State-aid public road purposes in pursuance of any law so authorizing, and shall find or believe, concerning which the decision of the condemning authority shall be final and conclusive, that the title of the apparent or presumptive owner of such property is defective, doubtful, incomplete or in controversy; *or* that there are or may be persons unknown or nonresident who have or may have some claim or demand thereon, or some actual or contingent interest or estate therein; *or* that there are minors or persons under disability who are or may be interested therein; *or* that there are taxes due or that should be paid thereon, or shall, for any reason, conclude that it is desirable to have a judicial ascertainment of any question connected with the matter; such State or county may, through any authorized represen-

tative . . . file a proceeding in rem . . . condemning the same to the use of the petitioner upon the payment of just and adequate compensation therefor to the person or persons entitled to such payment." (Emphasis supplied.) Ga. L. 1961, pp. 517, 519 (*Code Ann.* § 36-1301).

The property owner argues that there was no determination as to any of these conditions precedent; that the petition contains no allegations as to them; that the evidence does not show their existence; that these conditions must be determined by the Board and alleged in the order of necessity; and that condemnation under the 1961 Act, as amended, is not authorized without showing the existence of some one or more of these conditions.

We find no defect as to this feature of the condemnation proceeding.

The Director entered an order finding that "the circumstances are such that it is necessary" to condemn under the provisions of the 1961 Act, as amended. The circumstances upon which the condemning authority's finding is based are not required to be set forth in the order of necessity. The condemning authority has only to "find or believe" that one of the several circumstances exists, and upon that alone he may determine to proceed. Furthermore, neither the finding of necessity nor the determination to use the 1961 Act, as amended, rather than a different statute which was employed to condemn nearby property, is subject to challenge or question; and the fact that another procedure might have been employed does not invalidate this proceeding. See *State Hwy. Dept. v. Smith,* 219 Ga. 800, supra; *State Hwy. Dept. v. Respess,* 111 Ga. App. 421 and 787, supra.

Also, it is immaterial whether this proceeding is authorized by the general power of eminent domain. It was validly brought under the 1961 Act, as amended.

■ Related to the subject matter of the foregoing division, and also to that of Division 2, supra, is the issue, raised in several contentions of the property owner, as to whether he can challenge the necessity for the taking of the property.

Our answer is that he cannot.

The basis for this answer is found in the 1961 Act, as amended, which makes it quite clear that the determination of necessity by the condemning authority is final and conclusive. See section 1 of that Act, quoted in Division 5, supra. Also, section 3 requires in a condemnation proceeding under this Act the filing of a declaration of taking which "shall contain or have annexed thereto . . . A certified copy of an order by the Director of the State Highway Department of Georgia, finding that the circumstances are such that it is necessary to proceed in the particular case under the provisions of this Act, and specifically authorizing condemnation under the provisions of this Act," and provides that such order *"shall be conclusive as to the use of the property* condemned, *as well as the authority to condemn* under the provisions of this Act." (Emphasis supplied.) Ga. L. 1961, pp. 517, 520, as amended (*Code Ann.* § 36-1303). This section further provides that the judge of the superior court shall have authority to set aside the declaration of taking under certain circumstances, but states that "The power of the court in this respect shall not be construed as extending to a determination of questions of necessity, but there shall be a prima facie presumption that the property condemned is taken for and is necessary to the public use provided for in this Act; and such power shall be restricted to the following questions . . ." Also, see *State Hwy. Dept. v. Respess,* 111 Ga. App. 421, 423 and 787, 789, supra.

The above ruling does not amount to a holding that the procedure of the 1961 Act, as amended, may be unfairly exercised or that a condemnee might be "singled out" for such procedure, as contended by the property owner. As quoted in Division 2, supra, among the defenses available to property owners under this Act is that of abuse or misuse of the powers of the Act.

■ (a) The property owner contends that Georgia Laws 1962, Extraordinary Session, September-October, pages 37, 38 (*Code Ann.* § 36-1303), which purports to define "State-aid public road purposes" as used in the 1961 Act to include "limited access highways" as provided by Georgia Laws 1955, page 559 (*Code Ann. Ch.* 95-17A), is unconstitutional. He urges that this 1962 Act attempts by legislative construction to change the decision of

this court in *State Hwy. Dept. v. Hatcher*, 218 Ga. 299 (127 SE2d 803), contrary to the separation of power provision of the State Constitution (Art. I, Sec. I, Par. XXIII; *Code Ann.* § 2-123). He also contends that if this 1962 Act adds a class of roads for condemnation, then it is unconstitutional for other reasons, to wit: as containing more than one subject matter and matter different from the title (Art. III, Sec. VII, Par. VIII; *Code Ann.* § 2-1908); as not describing the law to be amended (Art. III, Sec. VII, Par. XVI; *Code Ann.* § 2-1916); and as being a special law where provision has been made by general law (Art. I, Sec. IV, Par. I; *Code Ann.* § 2-401).

These attacks cannot be sustained.

The 1962 Act, supra, was not an attempt by the legislature to perform the function of construction, which belongs to the judiciary.

In the *Hatcher* case, 218 Ga. 299, supra, this court (two Justices dissenting) held that a proposed limited access interstate highway was not a State-aid highway within the meaning of Georgia law and that property could not be taken under the 1961 Act, supra, for its construction. Appearing in that opinion (p. 302) is this significant language: "Under the 1961 Act the condemnation of private property for public road purposes in the manner therein provided is affirmatively granted only where the land taken is to be used for a State-aid road. If the General Assembly had desired to extend the right and power to condemn under this Act to all roads, it could have done so by omitting the limitation imposed by the words 'State-aid' as applied to public roads."

In the 1962 Act the General Assembly did "extend the right and power to condemn under this Act" to limited access highways as provided by Georgia Laws 1955, page 559. An examination of the body of the Act shows that the General Assembly added to section 3 of the 1961 Act (Ga. L. 1961, p. 517) the following: "The phrase 'State-aid public road purposes,' as used herein, is defined and is to be construed as any public highway of the State established and constructed, or to be constructed, under the provisions of Chapter 95-17 of the Code of Georgia of 1933, under the provisions of Code Section 95-1610, Ga. L. 1951,

pp. 31 through 36, and including 'Limited-access Highways', as provided for by chapter 95-17A of the Code, Ga. L. 1955, p. 559, et seq." We regard this as consistent with what was said in the *Hatcher* case, 218 Ga. 299, supra. The words "and is to be construed" in this 1962 amendatory Act are rejected as mere surplusage.

We therefore hold that the 1962 Act, supra, does not offend the separation of powers provision of the State Constitution. Also, it does not add a class of roads for condemnation, and therefore the other constitutional attacks need not be considered.

(b) The property owner further urges that the condemnation proceeding is unlawful in that the declaration of taking does not conform to the petition, since the declaration of taking states the property is being taken for State-aid road purposes while the petition recites it is for a limited access highway, which is not a State-aid road. As to this, he insists that private property cannot be condemned by the procedure of the 1961 Act, as amended, for a limited access highway as provided by the 1955 Act. Ga. L. 1955, p. 559.

As we appraise them, the allegations of the declaration of taking and the petition are not lacking in conformity. The declaration of taking recites that the property is taken for "State-aid road purposes." The petition alleges at the outset that the action is brought to acquire land for a certain "State-aid road (Limited-access Highway)," and avers subsequently that the right of way and/or rights described therein are for "State-aid public highway purposes . . ." Examining these documents in their entirety we find no inconsistency. The instant proceeding is brought under the 1961 Act, as amended, and the State-aid road will be a limited access one, as provided by the 1962 Act, supra.

■ The property owner also attacks the validity of the condemnation for State-aid road purposes upon several grounds because none of the provisions of *Code* § 95-1608 were complied with.

This section provides as follows: "The State Highway Engineer shall prepare a report or reports, accompanied by maps, setting forth the roads authorized by law and designated by

the State Highway Board as a part of the State-aid system, for approval by the Board. When duly approved by the Board, the maps shall be filed with the Secretary of State as the authoritative record of such State-aid roads, and copies shall be furnished to the counties concerned."

None of the acts set forth in 'Code § 95-1608, supra, are required to be performed before the condemnation can take place, and therefore have no effect upon the validity of this proceeding. See in this connection, *Owens v. State Hwy. Dept.*, 113 Ga. App. 608 (149 SE2d 406).

■ The property owner enumerates as error the trial court's holding that Georgia Laws 1966, page 320, was ruled unconstitutional by this court in *Calhoun v. State Hwy. Dept.*, 223 Ga. 65 (153 SE2d 418), that such decision nullified every provision of said Act, and that failure of the Department to comply with certain provisions of it did not invalidate this condemnation proceeding. In this connection, he insists that the trial court erred in failing to dismiss the proceeding because of omission of the advertisement of the location of the highway and of omission of any allegation in the condemnation proceeding of the date of approval of the original location of the highway, both of which are required by such 1966 Act.

The holding by this court in the *Calhoun* case, 223 Ga. 65, supra, as we appraise it, did nullify the entire 1966 Act, supra, so that compliance with these provisions was not necessary.

The attack made upon the 1966 Act in the *Calhoun* case, that it was "beyond the power of the General Assembly to specify what evidence can or can not be introduced to prove just and adequate compensation," (p. 68) went to the very heart of that Act. The opinion by this court concluded with the statement that "the 1966 Act is an attempt to invade the exclusive jurisdiction of the judicial department, it offends the constitutional separation of powers and is therefore void." P. 69.

The provision specifically ruled upon was *not* separable from the remainder of the Act. It is of significance here that the Act does not contain a separability clause. Also of significance is that the advertisement and recital of date of approval were

matters required to be performed by the Department in order to implement the main purpose of the Act, which was specifically ruled unconstitutional, to wit, prohibition against consideration of any increase or decrease in the value of the property taken due to the impending condemnation in determining the amount of just and adequate compensation for the property.

■ The property owner maintains that the trial court erred in holding that Georgia Laws 1955, page 559 (the Limited-Access Highway Act), is not unconstitutional for any reason assigned.

He urges that this Act is unconstitutional as follows. (1) It purports to authorize the establishment of limited access highways and to authorize acquisition of land by condemnation without regard to the amount or necessity or desirability and without regard to any limitation of location or to the necessity of preserving sufficient land for homes, agriculture, etc. He says the Act, or at least those portions authorizing condemnation, is therefore vague and indefinite and without any limitation or standard and purports to vest abritrary power in condemning authorities, in violation of our State Constitutional guaranties of equal protection (Art. I, Sec. I, Par. II; *Code Ann.* § 2-102) and due process (Art. I, Sec. I, Par. III; *Code Ann.* § 2-103). (2) Section 3 of the Act provides that privately owned and operated "public utilities facilities" may be installed on the property acquired for rights of way of limited access highways, and is so vague and indefinite as to vest arbitrary authority in condemning Authorities, both in violation of Art. I, Sec. III, Par. I (*Code Ann.* § 2-301) and Art. IV, Sec. II, Par. I (*Code Ann.* § 2-2501) which limit condemnation to public purposes. (3) Section 5, which allows the condemnor to acquire an entire lot, block or tract if by so doing the interests of the public will be best served even though such entire lot, block or tract is not immediately needed for the right of way proper, violates Art. I, Sec. III, Par. I (*Code Ann.* § 2-301) as permitting condemnation not for public purposes, violates Art. IV, Sec. II, Par. I (*Code Ann.* § 2-2501) as conferring arbitrary authority on condemnors due to the vagueness and

indefiniteness of the provision, and violates State equal protection and due process as authorizing acquisition of private property by condemnation for public purposes as same may or may not arise in the future for a highway not already authorized.

Furthermore, the property owner asserts that this 1955 Act is also void as follows: (1) the title contains no reference to exercise of the right of eminent domain or taking of property by condemnation and therefore those portions of the Act authorizing such are violative of Art. III, Sec. VII, Par. VIII (*Code Ann.* § 2-1908) in that the body contains matter different from the title; and (2) so far as it authorizes taking by condemnation, the Act is void since not limited to acquiring property necessary or reasonably necessary for highway purposes, contrary to Art. I, Sec. III, Par. I (*Code Ann.* § 2-301), Art. IV, Sec. II, Par. I (*Code Ann.* § 2-2501), and to State equal protection and due process.

The property owner has no standing to make some of these attacks. There is no injury to him from the provision allowing the acquisition of extra property not presently needed, as all of his property is within the right of way of the highway to be constructed. Likewise, he is in no position to complain that the Act allows condemnation without regard to necessity or desirability, as the condemning authority has determined both of these features. See Division 6, supra.

His other attacks cannot be sustained. The fact that "the installation of public utility facilities under the rules and regulations of the State Highway Department" are excepted from section 3's prohibition against commercial enterprise or activities within the rights of way acquired for limited access highways does not invalidate the Act. Condemnation of private land for public utility facilities is permitted by the laws of this State (*Code Ch.* 36-7, telegraph companies; *Code Ch.* 36-8, power companies; *Code Ch.* 36-9, waterworks companies; *Code Ann. Ch.* 36-12, pipe line corporations), and we know of no reason why they should not be located, when feasible, on land already taken for necessary rights of way, rather than on additional property taken for that purpose. As to the charge

412

that the body contains matter different from the title, we find no such defect. The title states among other things that the Act is to authorize the State Highway Department "to acquire land rights, or easements necessary for the establishment of such limited-access highways. . ."

■ The property owner takes the position that the highway in question has not been validly established, located, and laid out, and that the trial court erred in finding that his entire property is within the right of way of such highway and necessary to its construction. He urges that only a vague location has been set, without width or exact location of lanes and other essential features, and also that action by the Board, rather than by the Director, as here, was necessary.

These contentions are not meritorious.

(a) The trial court, from the documents and witnesses before it, was authorized to find that the highway had been located and laid out. Maps and drawings were introduced in evidence showing the location of the highway, and one of the witnesses testified that he could take the maps and locate the highway on the ground.

(b) Also, uncontradicted testimony showed that his property is entirely within the right of way of the highway. The trial court properly held it necessary to the construction since the Director's order had so determined, and, as ruled in Division 6, supra, his finding of necessity is not subject to challenge.

(c) This condemnation for a limited access highway is not void due to an alleged 200 foot width limitation on State-aid roads.

The property owner contends that *Code Ann.* § 95-1715, properly construed, still retains a 200 foot width limitation for State-aid roads. His position is that Georgia Laws 1945, page 258, and Georgia Laws 1953, January Session, page 421, do not remove it, although they make no reference to any limitation. Furthermore, he maintains that if the 1945 and 1953 Acts, supra, do have the result of removing the limitation, they violate certain provisions of the State Constitution, to wit: Art. III, Sec. VII, Par. VIII (*Code Ann.* § 2-1908) as containing matter different from what is expressed in the title; and Art. III,

Sec. VII, Par. XVI (*Code Ann.* § 2-1916) as lacking description of the alteration to be made in *Code Ann.* § 95-1715, viz.: removal of said width limitation.

To begin with, the 1945 Act, supra, has no place in this discussion. The 1953 Act, supra, repealed *Code Ann.* § 95-1715, as amended by such 1945 Act, and substituted a new section so as to begin it anew.

The new section 95-1715 created by the 1953 Act does not specify any width limitation whatever.

Also, the 1953 Act does not have either of the constitutional infirmities referred to above. It does not contain matter different from what is expressed in the title, which states that it is an Act *"to repeal Section 95-1715* of the official Code . . . as amended by . . . (Georgia Laws 1945, page 248) . . . *and to substitute therefor a new section 95-1715* . . ."* (Emphasis supplied.) Neither does the 1953 Act fail to distinctly describe the alteration to be made of *Code Ann.* § 95-1715. Repeal, not alteration, took place.

It was not necessary for the 1953 Act to mention the Act of 1939 (Ga. L. 1939, p. 187), which substituted a 200 foot width limitation for the original 100 foot one, since such 1939 Act had previously been repealed by the 1945 Act.

In summation, the salient events as to the width provision of *Code Ann.* § 95-1715 are as follows. The original 1919 Act contained a 100 foot width limitation; the 1933 Code adopted the 1919 Act and made that provision *Code* § 95-1715; the 1939 Act amended *Code* § 95-1715 to change the width limitation from 100 feet to 200 feet; the 1945 Act repealed the section as amended by the 1939 Act and enacted a new section without any width limitation; and the 1953 Act repealed the section as amended by the 1945 Act and enacted a new section 95-1715, which also contains no width limitation, and it is the present law.

■ The property owner also asserts that the trial court erred in holding that from the evidence he found State Route 400 was lawfully designated as a State-aid road; and that the portion which lies within Fulton County and embraces the property in question is also known as Project No. F 056-1 (12),

a designation given for the purpose of procuring Federal aid in the construction of the highway.

(a) The trial court was amply authorized to find that the subject highway, State Route 400, was lawfully designated as a State-aid road, in compliance with *Code* § 95-1705. There appears in the record a copy of an order of the Director making this proposed highway a part of the State-aid road system and a copy of a letter to the Fulton County Commissioners of Roads and Revenues so notifying them.

(b) The uncontradicted testimony was that the portion of the highway lying in Fulton County and embracing the appellant's property is also known as Project No. F 056-1 (12) and that this is a designation given for the purpose of procuring Federal aid.

▉ The property owner contends that this condemnation proceeding is rendered nugatory by insufficient description and plat of the property to be taken, by an insufficient appraiser's report and by failure of the Department to pay or offer to pay for moving expenses or access rights.

(a) As to the description, an attachment to the Director's order identifies the property as Parcel 37, containing 0.413 acres, and describes it as: "Beginning at a point on the east side of Poplar Circle 210 feet southeastwardly from the southeast corner of Euclid Avenue and Poplar Circle (said beginning point being on the dividing line between lots 146 and 147 of said plat) and running thence eastwardly along said dividing line 210 feet, more or less, to a 20-foot reservation; thence northwardly along said reservation 81 feet, more or less; thence westwardly 245 feet, more or less, to Poplar Circle; thence southwestward along the eastern side of Poplar Circle 87.4 feet, more or less, to the point of beginning; being improved property known as No. 221 (formerly 45) Poplar Circle, N.E., in the City of Atlanta, Georgia . . . as shown in yellow" on a certain attached plat.

Also sought to be condemned is whatever right, title and interest the property owner has in the 20 foot reservation mentioned in the above description. This reservation is described as lying "to the rear of, easterly and adjacent to the above

described property and which . . . is shown as colored in red on the [attached] plat. . ."

The description given here is sufficient compliance with the 1961 Act, as amended. It provides the metes and bounds of the portion which fronts on Poplar Circle and furnishes a key for its identification. The reservation is also sufficiently set forth.

The plat likewise comports with the law. The 1961 Act, as amended, does not require that the plat contain measurements or distances.

(b) As to the appraisal, the affidavit of the appraiser attached to the condemnation proceeding states, in essence, that he was employed by the Department to appraise parcel 37 of the right of way for Project No. F 056-1 (12) in Fulton County; that he is familiar with real estate values in the county and vicinity; that in appraising he took into consideration the fair market value of the parcel, as well as any consequential damages to any remaining property of the condemnee by reason of taking the parcel and any consequential benefits to any remaining property by reason of such taking; and that he thus determined that just compensation is $19,000.

The property owner complains that the affidavit states no facts as its basis; that the appraisal recites that consideration was given to consequential damages to remaining property but the entire property was taken; and that the appraisal shows that compensation was determined on the basis of fair market value, which did not include several stated items of damage and therefore is an illegal and unconstitutional basis of value. He also argues that insofar as the twenty foot reservation is concerned, the proceeding seeks to condemn a vague and indefinite interest.

As we evaluate these contentions they are not meritorious.

The legislation under which the condemnation is brought, the 1961 Act, as amended, does not require that the appraisal affidavit recite any factual basis for the amount of estimated compensation. It merely provides that the declaration of taking shall contain or have annexed thereto "A statement of the sum of money estimated by said acquiring authority to be just com-

pensation for the land taken, including consequential damages to land not taken, accompanied by a sworn copy as an exhibit of the appraiser's report justifying said sum." Ga. L. 1961, pp. 517, 520, as amended (*Code Ann.* § 36-1303 (5)).

The recitals as to consideration of consequential damages and benefits to land not taken do not invalidate the appraisal. There was no remaining land and hence no amount could have been added or deducted as to this.

As to the complaint that the compensation was determined on the basis of fair market value with no consideration of the stated items of damage, and thus being an illegal and unconstitutional basis of value, the property owner was not precluded by this appraisal. If he was dissatisfied with the amount of the estimated compensation, he had the right under the 1961 Act, as amended, to an interlocutory hearing before a special master on the issue "whether the amount deposited in court as just and adequate compensation is sufficient" (Ga. L. 1961, pp. 517, 526; *Code Ann.* § 36-1309) and also the right to appeal to a jury. Ga. L. 1961, pp. 517, 528 (*Code Ann.* § 36-1310). Upon a trial before a jury the property owner will have the opportunity to introduce evidence in support of all legitimate items of damage that he has suffered. See *Code* § 36-505; Ga. L. 1961, pp. 517, 528 (*Code Ann.* § 36-1310) ; Ga. L. 1969, p. 495.

As to the 20 foot reservation, the condemnation purports to take whatever interest the property owner has. By reciting that it is condemning whatever interest he has in it, the Department brings that issue in question and acknowledges that it will pay him for any interest he has.

(c) Concerning moving expenses, the property owner asserts that they will be considerable and that there has been no offer to pay them. He contends that since the appraiser's estimate of compensation does not include such expenses, this proceeding violates due process (Art. I, Sec. I, Par. III; *Code Ann.* § 2-103). He also urges that the 1961 Act, as amended, is unconstitutional since it makes no provision for these expenses. He further argues that under Georgia Laws 1969, page 495, he is entitled to payment or offer of these before ouster. He insists that he is entitled to proceed in equity due to the omission of payment or tender of such expenses.

These contentions constitute no valid reason to void the condemnation proceeding.

An exhibit to the property owner's equitable complaint contains a notice by the Department to him offering relocation assistance, and stating that he probably is entitled to some moving expenses under Georgia Laws 1966, page 588 (now repealed and replaced by Georgia Laws 1969, page 495, supra). The property owner will have the opportunity to prove such expenses.

(d) The failure to recite in the Department's condemnation documents that access rights were included in the property condemned is of no consequence. The taking here was of the entire property, which included these rights.

■ The property owner also attacks Georgia Laws 1969, page 492, an Act to authorize the acquisition of property for rights of way or construction or maintenance of roads by the Department in advance of need if the acquisition is part of a specific plan of highway development. He insists that insofar as this Act authorizes exercise of the power of eminent domain for other than necessary public uses, it violates certain provisions of the State Constitution; and if his property is permitted to be taken it will have been taken for other than necessary public uses, particularly since here no highway has in fact been located or established by authority of law.

These attacks must fail due to the property owner's lack of standing to make them. This condemnation is not brought under such 1969 Act and is not one in advance of need. The Director's order here states that in order to maintain the projected schedule of road construction it is necessary that the right of way be acquired without delay, and that the property involved here is essential for the construction of this project. Furthermore, Division 11, supra, holds that the trial court properly found that the highway in question has been located and established and that the property involved here lies within the right of way of such highway. Therefore, the property is being taken for necessary public uses and will not be held in abeyance for a long period of time before actual use.

■ The property owner urges that the trial court erred in granting the motion of the Department for possession and in

■

ordering him to surrender the property to it within the time provided in the order, conditioned upon the outcome of this appeal.

In this connection the 1961 Act, as amended, provides in part that "upon the filing of a declaration of taking, the court shall have power to fix the time, the same to be not later than 60 days from the date of the filing of the declaration of taking, as herein provided for, within which and the terms upon which the parties in possession shall be required to surrender possession to the petitioner." *Code Ann.* § 36-1303.

The property owner contends that his answer to this motion for possession sets forth good defenses, which were dismissed.

(a) As to this, his answer to the motion contained several questions which he also raised in his answer to the condemnation proceeding or in his complaint in equity, or in both. In fact he refers to his complaint for further detail on most of his contentions. The rulings made on those issues control here.

(b) One contention made in his answer to the motion that was not identically raised elsewhere is that possession should not be ordered because his property is not needed at this time for public highway purposes. He alleges that use of the property is worth $200 a month or more to him, and that the Department has not paid or offered to pay for such use.

On this issue he contends that the provision of *Code Ann.* § 36-1303 (Ga. L. 1961, pp. 517, 520, as amended) requiring the court to order possession surrendered within 60 days from filing of the declaration of taking violates several provisions of the State Constitution, to wit: Art. I, Sec. I, Par. XXIII (*Code Ann.* § 2-123) as to separation of powers; Art. I, Sec. I, Par. II (*Code Ann.* § 2-102) as to equal protection; Art. I, Sec. I, Par. III (*Code Ann.* § 2-103) as to due process; and Art. I, Sec. III, Par. I (*Code Ann.* § 2-301) as to just and adequate compensation for private property.

None of these constitutional attacks is valid.

(1) The provision here under consideration does not offend the separation of powers provision. We cannot agree that the time within which possession should be delivered is a judicial, not a legislative, question.

(2) Likewise, it does not deny equal protection, as it applies to all property condemned under this statute.

(3) Neither does it deprive the property owner of due process of law. His property is being condemned for present use. That there will be some interval of time between acquisition and actual construction is inevitable. However, the Director's order states that it is necessary to acquire the right of way without delay in order to maintain the projected schedule of road construction. We cannot say that the requirement of surrender within 60 days of the declaration of taking is arbitrary or capricious.

(4) Nor does this provision deprive him of his property without just and adequate compensation. The latter, determined as provided by the 1961 Act, as amended, will be paid for the property.

■ The property owner complains of the dismissal of the tenth amendment to his equitable complaint, urging that the trial court erred in holding that the amendment is an action in tort against the State which is not permitted by law.

This amendment alleged in substance that the sale of the residence and other improvements on the property to the defendant Allgood was without authority of law and constitutes a trespass and tortious wrong for which he is entitled to recover nominal and general damages, and prayed for $100 damages. The property owner argues that this sale was a damaging within the meaning of the Constitutional provision that just and adequate compensation must be paid when private property is damaged or taken for public purposes. Art. I, Sec. III, Par. I (*Code Ann.* § 2-301).

Whether this amendment was an attempt to sue the Department for a tort or was an allegation as to damaging under the Constitution, no infliction of damages is shown since the sale complained of was *on condition* that the Department acquired title. Therefore, the amendment alleges mere apprehension of injury, for which neither law nor equity provides relief.

This enumeration is not meritorious.

■ The holding in the preceding division also controls as to the contention that the trial court erred in limiting the case

against the defendant Allgood to the sole purpose of retaining him as a party defendant during the time allowed for notice of appeal and the appeal itself, during which time he is enjoined from disturbing the property owner.

Under the rulings herein made the only issue left in the case is just and adequate compensation. As to that Allgood does not need to be a party. The trial court properly left him in the case pending the outcome of this appeal, in the event this court should reverse and hold that the property owner is entitled to relief against him.

This contention is without merit.

■ The property owner also maintains that the trial court erred in holding that the condemnation case and the equity case involve identical issues and that the pleadings of the property owner in both cases are identcial as to the questions of law, equity and the Constitution sought to be raised, except for his efforts to have the defendant Allgood made a party in the equity case.

He argues that in his defenses and prayers in the condemnation case alone he sought recovery of expenses, costs and damages arising from the proceeding.

This feature is immaterial and is not harmful to the property owner. The trial court considered and ruled upon all of the contentions in both cases.

■ The rulings made in the preceding divisions of this opinion are controlling against the property owner as to other contentions which are broad in scope and need not be set forth fully here.

(a) For this reason, there is no merit in the complaint that the trial court erred in holding that the Department has complied with all conditions precedent in this condemnation proceeding.

(b) The prior rulings are also decisive against the enumeration that the trial court erred in denying the prayers of the property owner that the condemnation proceeding be declared void and also in denying his prayer that the Department be restrained from proceeding with the condemnation.

(c) Likewise, the holdings already made adversely dispose of the contention that the trial court erred in ruling that the sole question upon which the property owner is entitled to be heard is that of just and adequate compensation for the property being condemned, and also in ruling that the property owner has a complete and adequate remedy in the condemnation proceeding.

We find no cause for reversal of the judgment upon which the appeal is predicated.

*Judgment affirmed. All the Justices concur, except Nichols, Felton and Hawes, JJ., who dissent.*

NICHOLS, Justice, dissenting. I dissent from the first division of the majority opinion, the other divisions necessarily controlled thereby and the judgment of affirmance.

"In the absence of some other exclusive method of determination provided by the Constitution, whether an amendment has been properly proposed and adopted according to the requirements of the existing Constitution, and has become a part of the fundamental law of the State, is generally a judicial question." *Hammond v. Clark,* 136 Ga. 313 (1) (71 SE 479, 38 LRA (NS) 77).

I recognize the right of the people to amend the Constitution (the people's Constitution) in almost any conceivable manner so long as the amendments are made in accordance with law. In *Goolsby v. Stephens,* 155 Ga. 529, 540 (117 SE 439), with two Justices dissenting on other grounds, it was held with reference to the ballot submitting a constitutional amendment: "It was not necessary that the entire amendment should have been printed on the ballots. The reference on the ballots to the proposed amendment is to inform the voters what they are voting for as an amendment to the Constitution; and such reference is sufficient *when it contains enough to enable the voters to ascertain for what amendment they are voting.* When this is done, the voters can be fully informed as to its full provisions by looking to the proposed amendment." (Emphasis supplied).

The decision in *Cooney v. Foote,* 142 Ga. 647, 654 (83 SE 537), with one Justice expressly not concurring in all that was

said, held: "It was never contemplated that the entire proposed amendment should be printed on the ballot. It was within legislative discretion to adopt some formula by which the voter would express his assent or dissent to the proposed amendment. The formula prescribed by the legislature was not intended for the purpose of informing the voter as to the *full contents* of the amendment. On the contrary, the formula was intended as the declaration by the voter of his approval or disapproval of the amendment which had been published in each congressional district. The amendment was submitted to the elector, and the formula prescribed was simply to elicit his expression as to whether or not the proposed amendment should become a part of the organic law. The formula written or printed on his ballot was but the legislative means of obtaining his expression upon the published proposal; and when he adopted the formula he indicated his vote upon the whole amendment which was submitted, and not a mere part." (Emphasis supplied). In that case the ballot *described* the amendment proposed although of necessity it did not include the entire amendment.

In *Townsend v. Smith*, 144 Ga. 792, 795 (87 SE 1039), with Mr. Chief Justice Fish absent, it was held that while a proposed amendment to the Constitution does not stand on the same footing as an ordinary Act of the General Assembly, yet when a proposed amendment to the Constitution is in the form of an Act, having a caption, it is permissible to look to the caption to determine what change is intended in the event of an ambiguity.

The proposed amendment here under consideration read as follows:

"A Resolution proposing an amendment to the Constitution so as to provide for the payment for taking or damaging private property for public road and street purposes; to provide for the submission of this amendment for ratification or rejection; and for other purposes.

"Be it resolved by the General Assembly of Georgia:

"Section 1. Article I, Section III, Paragraph I of the Constitution is hereby amended by striking the period at the end

thereof and inserting in lieu thereof a comma, and by adding the following language:

" 'except that when private property is taken or damaged for public road and street purposes by the State and the counties and the municipalities of the State, just and adequate compensation therefor need not be paid until the same has been finally fixed and determined as provided by law, but such just and adequate compensation shall then be paid in preference to all other obligations except bonded indebtedness. The General Assembly may by law require the condemnor to make prepayment against adequate compensation as a condition precedent to the exercise of the right of eminent domain and provide for the disbursement of the same to the end that the rights and equities of the property owner, lien holders and the State and its subdivisions may be protected.' So that when so amended, said Paragraph I shall read as follows:

" 'Paragraph I. In case of necessity, private ways may be granted upon just compensation being first paid by the applicant. Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid, except that when private property is taken or damaged for public road and street purposes by the State and the counties and the municipalities of the State, just and adequate compensation therefor need not be paid until the same has been finally fixed and determined as provided by law but such just and adequate compensation shall then be paid in preference to all other obligations except bonded indebtedness. The General Assembly may by law require the condemnor to make prepayment against adequate compensation as a condition precedent to the exercise of the right of eminent domain and provide for the disbursement of the same to the end that the rights and equities of the property owner, lien holders and the State and its subdivisions may be protected.'

"Section 2. When the above proposed amendment to the Constitution shall have been agreed to by two-thirds of the members elected to each of the two branches of the General Assembly, and the same has been entered on their journals with the 'Ayes' and 'Nays' taken thereon, such proposed amendment

shall be published and submitted as provided in Article XIII, Section I, Paragraph I of the Constitution of Georgia of 1945, as amended.

"The ballot submitting the above proposed amendment shall have written or printed thereon the following:

" 'For ratification of amendment to the Constitution so as to provide for the payment for taking or damaging private property for public road and street purposes."

" 'Against ratification of amendment to the Constitution so as to provide for the payment for taking or damaging private property for public road and street purposes.'

"All persons desiring to vote in favor of adopting the proposed amendment shall vote for ratification of the amendment, and all persons desiring to vote against the adoption of the proposed amendment shall vote against ratification.

"If such amendment shall be ratified as provided in said Paragraph of the Constitution, it shall become a part of the Constitution of this State. The returns of the election shall be made in like manner as returns for elections for members of the General Assembly, and it shall be the duty of the Secretary of State to ascertain the result and certify the result to the Governor, who shall issue his proclamation thereon."

Prior to the proposed amendment the Constitution provided "for the payment for the taking or damaging of private property for public road and street purposes." No amendment was necessary to accomplish this purpose. In *Woodside v. City of Atlanta,* 214 Ga. 75 (103 SE2d 108), with dissents as to when a "taking" of private property occurs, it was recognized by all the members of the court as it was then constituted that just and adequate compensation must be first paid.

Thus the caption as well as the ballot proposed to do what was already required. The amendment was for another purpose. It was to provide for an exception. The amendment as originally introduced in the Georgia House of Representatives did not include the second sentence but this was added as an amendment before the same was voted upon. See House Journal, 1960 Session, p. 516.

Under the purported amendment, private property could be

physically taken for public road and street purposes and no payment made until years later after the issue as to what constituted just and adequate compensation had been litigated through the court system of the State one or more times. Under the amendment to such purported amendment the General Assembly may, but is not required to, provide for some prepayment as against just and adequate compensation.

At the General Election whereat the proposed amendment was submitted to the electorate, 19 other general amendments and 68 local amendments were also submitted. The local amendments were voted on in various subdivisions of the State. See Ga. L. 1961, p. 754 et seq. While the amendments are published throughout the State yet the voters have a right to expect that they will not be misled by the General Assembly.

None of the decisions cited by the majority hold that a ballot submitting a constitutional amendment may ask the voter to vote for or against an issue entirely different from the amendment actually proposed.

Under the majority opinion any question proposed by the General Assembly would be sufficient. Under this rationale if two amendments were proposed, one to provide capital punishment for speeding in excess of 2 mph over the posted speed limit and the other to provide paraplegic war veterans with an additional homestead exemption, if the ballots as prescribed by the General Assembly read for or against capital punishment for speeding when referring to the paraplegic war veteran amendment and for or against additional homestead exemptions for paraplegic war veterans when referring to capital punishment for speeding, the results of such election (where one amendment was ratified and the other rejected) would stand.

This is nothing more or less than an abdication of the judicial powers and duties of this court.

Moreover, in *Seago v. Richmond County*, 218 Ga. 151 (126 SE2d 657), it was held that a statute (Ga. L. 1939, p. 305) provided for the Governor to prescribe the language to be used in presenting constitutional amendments to the voters and required that the ballot state "the nature of the proposed amendment" with the requirement:

"In so preparing the form of the ballot, the Governor shall use such language as will enable the voters to intelligently pass upon any such proposed amendment and intelligently register their votes concerning the same." P. 155. This 1939 Act was not repealed until 1962 (Ga. L. 1962, p. 690). The purported amendment in the case sub judice was placed on the General Election ballot in 1960. Thus is presented the question of the effect of the 1956 constitutional amendment (Ga. L. 1956, p. 637) on the Act of 1939.

Under the decisions exemplified by *McKnight v. City of Decatur*, 200 Ga. 611, 619 (37 SE2d 915), the effect of a constitutional amendment upon a valid existing law is not to repeal the same but to require construction consistent with such amendment. The 1939 Act, supra, insofar as material here, did two things. It (1) placed the duty on the Governor to prepare the ballots submitting constitutional amendments proposed by the General Assembly, and (2) directed how the ballots should be prepared. Properly construing such Act after the 1956 amendment, supra, the duty of preparing the ballot was transferred to the General Assembly but the direction as to how such ballots should be prepared still remained in the statute law of Georgia. Properly construed the *Seago* case is applicable to the present case and the language on the ballot prepared by the General Assembly did not permit "the voters to intelligently pass upon any such proposed amendment and intelligently register their votes concerning the same." This purported amendment never became a part of the Constitution of Georgia.

I am authorized to state that Mr. Justice Hawes concurs in this dissent.

FELTON, Justice, dissenting. Assuming that appellant had standing to attack the adoption of the constitutional amendment I dissent from the judgment of affirmance and the ruling of the court in Division 1. I concur generally in Justice Nichols' dissent but not in all that is stated therein.