## 44194. MARTIN v. GEORGIA DEPARTMENT OF PUBLIC SAFETY et al.
### (357 SE2d 569)

HUNT, Justice.

In a case of first impression, we are called upon to re-examine the status of sovereign immunity in this state after the enactment of the 1983 Constitution, which provides for the waiver of sovereign immunity for the state or its agencies where liability insurance has been purchased. 1983 Ga. Const., Art. I, Sec. II, Par. IX. The trial court granted summary judgment to the Department of Public Safety, Commissioner Hardison and State Patrolman D. E. Cochran. The plaintiff appeals.

State Patrolman D. E. Cochran initiated a high-speed chase to apprehend Charles Brewer, who was detected by Cochran to be speeding on Georgia Highway 400 in Lumpkin County. The subsequent chase covered 23 miles and two counties. It lasted 22 minutes and involved speeds in excess of 100 miles per hour, officers from three counties and the State Patrol. During the chase, Cochran was in radio contact with Alan Seabolt, a Lumpkin County Deputy Sheriff. The plan was that Seabolt would attempt to block an intersection ahead of Brewer and Cochran, thus ending the chase. At one point, Cochran requested Seabolt to hurry because Brewer was rapidly approaching the intersection in question. In that effort, Seabolt lost control of his car on a curve and crashed into a car driven by Martha Collins, knocking it down an embankment into a creek. She was killed, and her five-year-old grandson was rendered quadriplegic.

This tort suit was filed on behalf of the child against the Department of Public Safety, then Commissioner Hugh Hardison, State Patrolman D. E. Cochran, Lumpkin County Deputy Sheriff Alan Seabolt, his superior Sheriff Kenneth Seabolt, and Charles Brewer. Claims against Commissioner Hardison were bottomed on negligence and 42 USC § 1983, alleging failure to set out objective guidelines for high-speed chases and to train officers properly in that regard.

The Department, Hardison and Cochran argue that, notwithstanding the provisions of the 1983 Constitution, they are immune from the prosecution of this claim under the principle of sovereign immunity. We disagree.

Art. I, Sec. II, Par. IX of the 1983 Constitution provides that "Sovereign immunity extends to the state and all of its departments and agencies . . . . Also the defense of sovereign immunity is waived as to those actions for the recovery of damages for any claim against

the state or any of its departments or agencies for which liability insurance protection for such claims has been provided but only to the extent of any liability insurance provided." Thus, this section of the 1983 Constitution expresses the will of the people of this state that citizens injured by the actions of the state be compensated if insurance is available. Of course, the state is not required to provide insurance protection either through purchasing coverage from a private carrier or through the establishment of a self-insurance fund. But if it does either, the waiver operates and the proceeds of a self-insurance fund would stand on the same footing as those available from a policy issued by a private carrier. As pointed out by Justice Charles L. Weltner in his special concurrence in *Toombs County, Ga. v. O'Neal*, 254 Ga. 390, 393 (330 SE2d 95) (1985), "[w]hen a public body has purchased liability insurance, there is no necessity for the protection which sovereign immunity provides *to the public*. Conversely, the insurer, as a private, for-profit entity, should not be accorded the protection of sovereign immunity, which exists for the benefit of the *public*. Thus, . . . when the public utility of sovereign immunity has evaporated, that doctrine should not serve to shield what is purely a private interest." (Emphasis in original.) Our duty is to honor that articulation of public policy.

1. We first decline the plaintiff's and amici's invitation to abolish the doctrine of sovereign immunity by judicial fiat. While under the 1983 Constitution this court may address the constitutionality of a constitutional provision as well as the constitutionality of other laws, 1983 Const. Art. VI, Sec. VI, Par. II, we find that present public policy has been clearly expressed by the passage of the very constitutional provision the contenders argue gives us the power to abolish it. Compare *Clark v. State of Ga.*, 240 Ga. 188 (240 SE2d 5) (1977); *Sheley v. Bd. of Public Education for the City of Savannah*, 233 Ga. 487 (212 SE2d 627) (1975). There can be no mistaking the intention to preserve the protection of the public purse through the doctrine of sovereign immunity except to the extent that insurance has been purchased.

2. We next consider the question whether after the passage of Art. I, Sec. II, Par. IX of the 1983 Constitution, the purchase of insurance *for department employees* under OCGA Ch. 45-9 and OCGA § 45-9-40 results in a waiver of the sovereign immunity of the department itself and of the official immunity of the employees.

Before the 1983 constitutional amendment, Ch. 45-9, passed in 1977, provided for the purchase of liability insurance or establishment of a self-insurance fund: ". . . insuring or indemnifying such officers, officials or employees *to the extent that they are not immune from liability against personal liability, for damages arising out of the performance of their duties or in any way connected therewith*."

Section 45-9-5 states: "Nothing in this article shall constitute a waiver of the immunity of the state from any action." Cases decided after the passage of these provisions clearly continued to uphold the sovereign immunity of the state and the official immunity of state employees. E.g., *Hennessey v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980).

In *Robinson v. City of Decatur*, 253 Ga. 779 (325 SE2d 752) (1985), however, decided after the passage of the 1983 Amendment, but in which the cause of action had arisen before its enactment, a change in public policy was foreshadowed. There, now Presiding Justice Clarke, concurring specially in the face of three dissenters who would have applied the waiver retroactively, wrote: "Constitutional principles and public policy would dictate that this waiver be applied to all sovereign immunity cases arising after the effective date of this amendment. However, the application of these principles and policies must wait until the proper case." Id. at 780. This is the proper case. As Justice Weltner said in his dissent in the same case, "when there is no jeopardy to the public treasury, the traditional choice — either unrequited damage to an individual or reparations from the public treasury — no longer need be made."

In the case before us, the plaintiff asserts liability of the Department of Public Safety under principles of respondeat superior for the negligence of Cochran in initiating and continuing the pursuit of Brewer in reckless disregard of the safety of the public. Plaintiff additionally alleges negligence by the department in inadequately training and providing guidelines to its officers in order to minimize injuries in high-speed chases. That negligence is attributed to former Commissioner Hardison. The department admits that these employees are covered by a comprehensive general liability policy.

The comprehensive general liability trust fund includes the following pertinent provisions:

"This policy covers the following: PERSONAL INJURY, BODILY INJURY, SICKNESS, DISEASE OR DEATH AND PROPERTY DAMAGE caused by or resulting from error, omission or negligence *in the performance of duties within the scope of an insured's employment* with a participating entity that has purchased coverage prior to the date of the occurrence.

"In consideration of the payment of the appropriate premium, and subject to all of the limitations set forth in this policy or any addendum hereto, the Fund hereby agrees that it will provide the following coverage:

"A) Comprehensive general liability insurance. The Fund will pay on behalf of any insured, all sums which the insured shall become legally obligated to pay as damages, court costs and attorney fees, because of bodily injury, property damage or personal injury resulting from any job related occurrences caused by any insured. . . .

"B) Occupational errors or omissions liability insurance. The Fund will pay on behalf of any insured, all sums which the insured shall become legally obligated to pay as damages, court costs and attorney fees, arising out of the performance of or failure to perform official duties in the insured's capacity as an officer or employee and caused by the insured. The Fund will also pay on behalf of the insured all such sums within the policy limits arising out of the rendering of or failure to render services by any person for whose acts or failure to act such insured is legally responsible by reason of the insured's position." (Emphasis in original.) Thus, this insurance fund covers the negligent acts "arising out of the performance of or failure to perform *official duties in the insured's capacity as an officer or employee* and caused by the insured." (Emphasis supplied.) Id. supra. Because negligence in performing official acts is covered by this insurance, these officers' official immunity is waived to the extent to which this coverage will pay for the claims asserted. *DeKalb County School Dist. v. Bowden*, 177 Ga. App. 296, 300 (339 SE2d 356) (1985), cert. denied.[1] And, insofar as the department is vicariously liable for the acts of its servants, here Hardison and Cochran, for whom insurance is provided, then sovereign immunity is waived to the extent of the available insurance.[2] 1983 Ga. Const., Art. I, Sec. II, Par. IX. It follows, therefore, that Hardison and Cochran were not entitled to summary judgment on the ground of official immunity, nor the Department of Public Safety, on the basis of sovereign immunity.

3. Defendants Hardison and Cochran next urge they were not negligent as a matter of law and were nevertheless entitled to summary judgment. Cochran relies on OCGA § 40-6-6, allowing a "driver of an emergency vehicle . . . when in the pursuit of an actual or suspected violator of the law . . ." to violate rules of the road "only when such vehicle is making use of an audible signal and use of a . . . red . . . or blue light. . . ." Subsection (d) of that same code section provides, however, that "the foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons." We cannot say, on the record

---

[1] *Rea v. Bunce*, 179 Ga. App. 628, 630 (347 SE2d 676) (1986), reached the opposite result relying on *Robinson v. City of Decatur*, supra, 253 Ga. at 780 (4). Insofar as these opinions are inconsistent with 1983 Const., Art. I, Sec. II, Par. IX, they must be and hereby are overruled.

[2] Contrary to the Department's assertion, this holding does not amount to an erosion of the doctrine of sovereign immunity beyond that authorized by the 1983 Constitution. No law requires the providing of insurance. No law requires either a private carrier or a self-insurance plan to cover such an event. But if such insurance is in effect, contracting to pay for damages arising from the conduct for which the claim is asserted, then that contract is enforceable, and the claim is to be paid to the limits of the contract, sovereign immunity notwithstanding. Conversely, to the extent and if, for any reason, such payment is not required under the contract, there is no wavier of immunity.

here before us,[3] that no genuine issue of fact remains as to Cochran's liability. *City of Winterville v. Strickland*, 127 Ga. App. 716, 718 (194 SE2d 623) (1972).

We reach a different result as to the negligence claims against Hardison. These claims allege that he, as head of the State Patrol, failed to provide objective standards for high-speed chases and failed to train his officers properly in such techniques. Included in the record is Policy Statement Number 21, which sets out detailed guidelines for pursuit driving, and a handbook for a Georgia State Patrol Pursuit Training School.

The plaintiff submitted accident reports showing that numerous fatalities had resulted in this state from high-speed chases over the past few years, and the testimony of an expert, a co-founder of the National Academy of Police Driving in Texas, who concluded after studying the Patrol's pursuit materials that these "documents failed to set forth an objective standard of care by which Georgia State Troopers can determine how to govern their conduct before, during and after the initiation of high speed pursuit chases on the public roads, . . ." However, no objective guidelines which might have been appropriate or facts which show the department's guidelines and training are inadequate were set out in his affidavit. Furthermore, no attempt was made to relate this asserted lack of guidelines and training to Cochran's conduct in pursuing Brewer. We, therefore, conclude that no material issue of fact remains as to the negligence of Hardison, and he was properly granted summary judgment by the trial court.

4. The last question is whether under these same facts a claim under 42 USCA § 1983 will lie against former Commissioner Hugh Hardison for maintaining an official policy wherein the department failed to train officers properly and to establish adequate guidelines for high-speed pursuit, and against Officer Cochran for negligently creating a risk to the plaintiff by initiating and pursuing the high-speed chase.

Section 1983 creates a private cause of action for the deprivation of constitutional interests. "[I]t is when execution of a government's *policy or custom*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." (Emphasis supplied.) *Monell v. Dept. of Social Services of the City of New York*, 436 U. S. 658, 694 (98 SC 2018, 56 LE2d 611) (1977). This federal law permits redress to injured citizens for abuses of govern-

---

[3] Trooper Cochran's incident report reveals numerous life-threatening instances during the chase, both before and after Seabolt became involved.

mental power amounting to a deprivation of due process. Therefore, mere negligence by a governmental employee does not rise to the level of such a constitutional tort. *Daniels v. Williams*, 474 U. S. 329 (106 SC 662, 88 LE2d 662) (1986); *Davidson v. Cannon*, 474 U. S. 344 (106 SC 668, 88 LE2d 677) (1986). In *City of Cave Spring v. Mason*, 252 Ga. 3, 4-5 (310 SE2d 892) (1984), we restated the standard: "We interpret 42 USCA § 1983 to create a cause of action, cognizable by the courts of this state, based upon acts which are in implementation of an *intentional policy*, adopted or ratified by the governing body of a public agency, which acts work deprivation of a constitutional right. Such a policy may be formal or informal, acknowledged or vigorously denied, persistent or intermittent, or implemented by but one single act. What is required to be proved, directly or circumstantially, is that a governing body has worked constitutional deprivation of a citizen pursuant to an impermissible or corrupt policy which is intentional and deliberate." (Emphasis in original.)

Officer D. E. Cochran under these facts is not liable under 42 USCA § 1983 for acting under color of state law to deprive plaintiff of a right, privilege or immunity guaranteed by the Constitution or laws of the United States. As was said in *Cannon v. Taylor*, 782 F2d 947, 950 (11th Cir. 1986), "[A]utomobile negligence actions [against a policeman acting in the line of duty] are grist for the state law mill. But they do not rise to the level of a constitutional deprivation."

Plaintiff urges, however, that the failure of the Department of Public Safety to provide adequate guidelines for its officers in the face of mounting evidence of damage caused as a result of high-speed chases does arise to a "policy or custom" which will support a § 1983 action against Hardison and the Department of Public Safety. We cannot say, however, that this public official was "deliberately indifferent or grossly negligent in respecting citizens' rights or [that he] tacitly authorized constitutionally offensive conduct. . . . It is clear . . . that at least a showing of gross negligence will be necessary to establish liability for inadequate training. See *Reeves v. City of Jackson*, 608 F.2d 644, 652 (5th Cir. 1979)." *Cannon v. Taylor*, supra, 782 F2d at 951.

We must, therefore, conclude that the trial court correctly granted summary judgment as to plaintiff's 42 USCA § 1983 claims.

5. The order transferring the case to Lumpkin County is vacated.

*Judgment affirmed as to Hardison; affirmed in part, reversed in part as to Cochran, and reversed as to the Department of Public Safety. Transfer vacated. All the Justices concur.*

DECIDED JUNE 25, 1987 —
RECONSIDERATION DENIED JULY 9, 1987 AND JULY 29, 1987.

*Downing, McAleer & Gaskin, Mark H. Johnson, David W. Grif-feth, J. Richardson Brannon,* for appellant.
*Michael J. Bowers, Attorney General, Neal B. Childers, Assistant Attorney General, Kennedy & Kennedy, Reid G. Kennedy, Robert E. Andrews, Cullen C. Larson,* for appellees.
*James E. Goodman, F. Clay Bush, Stephen H. DeBaun,* amici curiae.