A90A0396. PEEKS et al. v. DEPARTMENT OF HUMAN RESOURCES et al.
(396 SE2d 511)

BANKE, Presiding Judge.

The appellants filed this wrongful death action against the Georgia Department of Human Resources, d/b/a Northwest Georgia Regional Hospital ("the hospital") and three of its employees — Dr. Vibhaker Patel (the clinical director of the hospital), Dr. Gopichand Manney (a staff psychiatrist), and Linda May (a hospital social worker) — seeking to hold them liable for the death of John W. Peeks, who was killed by one of the hospital's former patients, David Crawford. This appeal is from the grant of the appellees' motions for summary judgment.

Crawford had been committed to the hospital's custody for examination and evaluation pursuant to an order of the Probate Court of Floyd County dated February 15, 1985. That order was issued on the basis of information that he had been wandering around his neighborhood with a pipe and had attempted to hit his nephew with the pipe. Crawford had previously received treatment at the hospital and had been diagnosed there as a chronic paranoid schizophrenic. He voluntarily committed himself following the completion of the court-ordered evaluation referred to above but then asked to be released a

week later. His treating psychiatrist, appellee-defendant Manney, responded by initiating proceedings for his involuntary commitment, whereupon Crawford withdrew his request for release. However, three weeks later, on March 23, 1985, he was discharged from the hospital by another staff psychiatrist, Dr. Edward Siedlecki, who is not a party to this litigation. Dr. Siedlecki had been assigned by the hospital's clinical director, appellee Patel, to substitute for Dr. Manney while the latter was away attending a seminar and taking two days' vacation. In releasing Crawford, Dr. Siedlecki apparently was guided by a determination made by the patient's "treatment team" (consisting of appellee May, a nurse, and an activity therapist), to the effect that he had satisfied the discharge criteria which they and Dr. Manney had set for him. Three weeks after his release, Crawford attacked the decedent with a pipe, mortally injuring him.

The appellants' claims are predicated on *Bradley Center v. Wessner*, 250 Ga. 199 (296 SE2d 693) (1982), wherein the Supreme Court affirmed this court's holding in *Bradley Center v. Wessner*, 161 Ga. App. 576, 581 (287 SE2d 716) (1982), that "where the course of treatment of a mental patient involves an exercise of 'control' over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient." The appellees contend that they cannot be charged with any such duty under the circumstances because the evidence of record establishes without dispute that Dr. Siedlecki alone had the authority to release Crawford during Dr. Manney's absence and that he alone made the decision to do so. They further contend that they are immune from liability pursuant to OCGA § 37-3-4, which provides as follows: "Any physician, psychologist, peace officer, attorney, or health official, or any hospital official, agent, or other person employed by a private hospital or at a facility operated by the state, by a political subdivision of the state, or by a hospital authority created pursuant to Article 4 of Chapter 7 of Title 31, who acts in good faith in compliance with the admission and discharge provisions of this chapter shall be immune from civil or criminal liability for his actions in connection with the admission of a patient to a facility or the discharge of a patient from a facility." *Held*:

1. Because appellee Manney was on leave from the hospital when Crawford was released and because appellee May was a social worker rather than a physician, we conclude that neither of them was in a position of "control" over Crawford at that time within the contemplation of *Bradley Center*, supra. Consequently, we hold that the trial court did not err in granting summary judgment in their favor.

2. The evidence does not, however, conclusively establish that ap-

pellee Patel had no "control" over Crawford within the contemplation of *Bradley Center*. As chief medical officer of the hospital, he had a direct statutory responsibility to oversee the patient's discharge pursuant to OCGA § 37-3-21, which specifies that "in no event shall any such patient be . . . discharged if, in the judgment of the chief medical officer of such facility, such discharge would be unsafe for the patient or others." Yet, in an affidavit submitted in support of his motion for summary judgment, he disavowed any involvement whatever in the decision to discharge Crawford. Under such circumstances, it is not apparent as a matter of law that he acted in "good faith compliance" with the discharge provisions of Chapter 3 of Title 37 of the Code so as to be entitled to immunity under OCGA § 37-3-4, supra; and we accordingly hold that the trial court erred in granting his motion for summary judgment.

· 3. Because we have held that Dr. Patel was not entitled to summary judgment, and because it is apparent without dispute from the record that the DHR provided him with liability insurance coverage for acts and omissions connected with his employment, we must conclude that the trial court also erred in granting summary judgment to the DHR, for the Supreme Court has held that "insofar as [a state agency] is vicariously liable for the acts of its servants, . . . for whom insurance is provided, then sovereign immunity is waived to the extent of the available insurance." *Martin v. Ga. Dept. of Public Safety,* 257 Ga. 300, 303 (357 SE2d 569) (1987). See also *Price v. Dept. of Transp.,* 257 Ga. 535 (361 SE2d 146) (1987).

*Judgment affirmed in part and reversed in part. Birdsong and Cooper, JJ., concur.*

ON MOTION FOR REHEARING.

On motion for rehearing, Dr. Patel and the DHR argue that the requirements of OCGA § 37-3-21 (a) were satisfied in this case because Dr. Siedlecki had been assigned by Dr. Patel to act as his "designee" in determining whether Crawford met the criteria for discharge set forth in that Code section. In this connection, we note that the term, "chief medical officer," is defined by OCGA § 37-3-1 (1), to mean "the physician with overall responsibility for patient treatment at any facility receiving patients under this chapter *or a physician appointed in writing as the designee of such chief medical officer.*" (Emphasis supplied.)

While there appears to be no question that Dr. Siedlecki was assigned by Dr. Patel to act as Crawford's treating physician during Dr. Manney's absence, we have been cited no evidence that he was "appointed in writing" to act as Dr. Patel's "designee" in determining whether Crawford's release or that of any other patient would be safe

for the patient and others. Furthermore, we have serious doubts about whether the appointment of a patient's treating physician to act as the chief medical officer's designee in discharging this statutory duty would be consistent with the purpose of OCGA § 37-3-21 (a). As we interpret that Code section, it is designed to prevent the discharge of a "voluntary" patient from a state mental institution in the absence of an administrative determination that such discharge would be safe for the public as well as the patient. To interpret § 37-3-1 (1) as permitting that determination to be made by the patient's treating physician would be to subvert that statutory purpose. Thus, while OCGA § 37-3-1 (1) undoubtedly gives the chief medical officer the authority to appoint another physician to make the § 37-3-21 (a) determination on his behalf, we believe the statutory scheme contemplates that the determination will be made by a physician acting on behalf of the institution rather than by the patient's treating physician.

*The motion for rehearing is accordingly denied.*

DECIDED JULY 3, 1990 —
REHEARINGS DENIED JULY 30, 1990 — CERT. APPLIED FOR.

*William Q. Bird, Robert K. Finnell,* for appellants.

*Michael J. Bowers, Attorney General, H. Perry Michael, Executive Assistant Attorney General, Stephanie B. Manis, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Mary F. Russell, Bruce M. Edenfield, Assistant Attorneys General, Shaw, Maddox, Graham, Monk & Harris, C. Wade Monk II* for appellees.