S91A1351. DONALDSON et al. v. DEPARTMENT OF
TRANSPORTATION et al.
(414 SE2d 638)

CLARKE, Chief Justice.

This is an appeal from an order dismissing an action against the Department of Transportation (DOT) on the grounds of sovereign immunity. Appellants contend that sovereign immunity was waived in this case to the extent of insurance because the 1991 amendment to the Georgia Constitution which eliminated the insurance waiver was not properly ratified. On review, we conclude that the ratification of the 1991 amendment to Art. I, Sec. II, Par. IX of the Constitution of Georgia is not invalid for any of the reasons cited by appellants, but that the changes in the constitutional provision do not apply to this case. We therefore reverse.

Billy Donaldson, Jr. was a passenger in a car accident. He and his father filed suit against the drivers of the vehicles involved, the DOT, and an employee of the DOT, William Durrence. The negligence action against the two drivers was settled. The remaining counts of the complaint allege negligent alignment of a driveway by the DOT and its employee.

The DOT filed a motion to dismiss, asserting the defense of sovereign immunity. The trial court granted the motion, citing Art. I, Sec. II, Par. IX of the Georgia Constitution. This section of the Geor-

gia Constitution was amended in 1991 to extend sovereign immunity to all state departments and agencies, regardless of any insurance.

1. Appellants contend that the constitutional amendment was not properly ratified by the voters. In support of their argument, they cite the following background of the 1991 amendment: In *Price v. Dept. of Transp.*, 257 Ga. 535 (361 SE2d 146) (1987), and *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300 (357 SE2d 569) (1987), this court held that sovereign and official immunities in tort actions were waived to the extent that state agencies or employees were covered by insurance. In 1988, a constitutional amendment curtailing the "insurance waiver" of sovereign immunity was not ratified by the voters. The question submitted to the voters was:

> Shall the Constitution be amended so as to provide for sovereign and official immunity and to provide for the circumstances and procedures under which such immunity shall be waived and to provide the General Assembly with certain authority to enact laws relating to sovereign and official immunity?

The voters disapproved of the proposed amendment by a vote of 70.6 percent. Two years later a similar amendment was presented to the voters for ratification. This time the ballot language read:

> Shall the Constitution be amended to provide that the General Assembly may authorize lawsuits against the state and its departments, agencies, officers, and employees and to provide how public officers and employees may and may not be held liable in court?

The amendment was adopted by 53.11 percent of the voters. Appellants argue that the ballot language on the 1990 ballot was misleading. Appellants point out that under the existing constitutional provisions, the General Assembly already had the authority to enact a state tort claims act and to provide for waiver of sovereign immunity. They argue that the 1990 ballot language would lead the average voter to believe that there was no current constitutional provision to waive sovereign immunity and that a "yes" vote would increase state liability. Further, the 1990 ballot language does not mention the terms "sovereign immunity" or "official immunity," does not indicate that the amendment restricts suit even where insurance is provided, and provides no new powers to authorize suit. Therefore, appellants argue, the ballot language was affirmatively misleading and violated the voters' substantive due process right to vote. The amendment was not actually "submitted" to the voters and was not properly ratified.

Although appellants' arguments have strong initial appeal, they

must ultimately fail. Article X, Sec. I, Par. II of the Georgia Constitution and OCGA § 21-1-2 prescribe the procedures for amending the Constitution. A proposal for amendment must be approved by two-thirds of the members of the Senate and House of Representatives. It must then be ratified by popular vote.

> The language to be used in submitting a proposed amendment or a new Constitution shall be in such words as the General Assembly may provide in the resolution or, in the absence thereof, in such language as the Governor may prescribe. Art. X, Sec. I, Par. II of the Georgia Constitution.

The only limitation on the General Assembly in drafting ballot language is that the language be adequate to enable the voters to ascertain which amendment they are voting on. *Sears v. State*, 232 Ga. 547 (208 SE2d 93) (1974).

Georgia formerly had a statute that required ballot language to enable the voter to "pass intelligently" on the proposed amendment. Ga. L. 1939, p. 305. That statute was repealed in 1962. Ga. L. 1962, p. 620. Since the statute was repealed, this court has conducted only a minimal review of ballot language if the state followed all of the constitutionally and statutorily required procedures for amending the constitution, including printing, publicizing and distributing the amendment. *Pye v. State Highway Dept.*, 226 Ga. 389 (175 SE2d 510) (1970); see also Art. X, Sec. I, Par. II of the Georgia Constitution and OCGA § 21-1-2.

Although we believe that the legislature should in every instance strive to draft ballot language that leaves no doubt in the minds of the voters as to the purpose and effect of each proposed constitutional amendment, there are several reasons for limiting the scope of our review. First, constitutional amendments are often complex. Any summary of the proposal may be subject to various interpretations. Even the legislators who sponsor an amendment may not agree on the purpose and effect of a particular amendment. Moreover, the court must trust the people and the political process to determine the contents of the Constitution. We must presume that the voters are informed on the issues and have expressed their convictions in the ballot box.

There is no dispute in this case that the full text and a summary of the amendment were published in accordance with state law and were made available to the voters to read and discuss prior to the election. Therefore, our only task is to determine whether the ballot language was sufficient to indicate which amendment was being voted on. The language at issue here undoubtedly meets that test. Compare *Sears* and *Pye*, supra. Further, careful comparison of the amendment

and the ballot language reveals that the ballot language at issue here is not inaccurate or "affirmatively misleading" as appellants allege. If it is misleading at all, it is only because of the information that is left out — not the information that was included in the ballot text. We decline to invalidate the ratification of a constitutional amendment on the grounds that the ballot language was not complete enough or did not include enough of the history of the amendment.

It is notable that this amendment's predecessor withstood a challenge to its ratification in which plaintiffs argued that the ballot language did not inform the electorate that they were adopting the doctrine of state sovereign immunity without any guarantee that the General Assembly would act on its power to enact a tort claims act. *Clark v. State*, 240 Ga. 188 (240 SE2d 5) (1977). In his dissent, Justice Hill asked "For what purpose are the people asked to adopt amendments to the Constitution which, after approval, are neglected and hence remain as if never passed? Although the people expressed their approval of the creation of a Court of Claims in 1974, no such court has yet been created." He further lamented that the ballot language that gave the General Assembly the power to create a Court of Claims did not inform the voters that the amendment also paralyzed the doctrine of sovereign immunity. Id. at 189.

Sovereign immunity protects the public treasury at the expense of the injured plaintiffs. The true cost of sovereign immunity, however, is the public perception that the government does not care about the victims of its negligence and does not hold itself to the same standards that it requires of its citizens. But it is the people, not the court, who must decide whether the cost of sovereign immunity is too high. We cannot second-guess what the voters understood or intended in casting their votes in favor of the amendment. Finally, it is not certain that the effect of the 1991 amendment will be to augment the government's protection under sovereign immunity. It may indeed stimulate the passage of a tort claims act.

2. Appellants next argue that the ballot language violated a fundamental federal constitutional right to vote and right not to be deceived in the ballot box. Appellants cite two federal district court cases that state that federal constitutional due process requires that "voters may not be misled to the extent that they do not know what they are voting for or against." *Burger v. Judge*, 364 FSupp. 504 (U.S.D.C. Mont. 1973); *Kohler v. Tugwell*, 292 FSupp. 978 (U.S.D.C. La. 1969). This is, in essence, the same test that we have applied above. Moreover, we note that in both of these cases the federal courts placed emphasis on the voters' responsibility to come to the ballot box informed on the issues. Further, the courts found no federal constitutional violation in either case, both of which involved ballot language that was more clearly misleading than the language at

issue here. Finally, the Eleventh Circuit Court of Appeals specifically rejected appellants' federal constitutional arguments in *Burton v. Georgia*, 953 F2d 1266 (11th Cir. 1992). Therefore, we find no federal constitutional due process violation here.

3. Appellants next argue that even if the amendment was properly ratified by the voters, it should be applied prospectively only. We agree.

It is a well settled principle of law that acts of the legislature are ordinarily given prospective effect unless the language of the act imperatively requires retroactive application. *Moore v. Gill*, 43 Ga. 388 (1871); *Anthony v. Penn*, 212 Ga. 292 (92 SE2d 14) (1956). The amendment at issue here is silent on the issue of retroactive application. We conclude therefore that the legislature intended prospective application only.

The state argues that even if the amendment is applied prospectively, the present action is barred. The state asserts that under the rule of *Goolsby v. Regents of the University System of Ga.*, 141 Ga. App. 605 (234 SE2d 165) (1977), a waiver of sovereign immunity is a matter of grace that may be withdrawn at any time and the repeal of a waiver of sovereign immunity divests the trial court of jurisdiction over the action against the state. We cannot agree that a waiver of sovereign immunity can be withdrawn by the state at any time. Such a rule would work an unreasonable hardship on litigating parties and would make any action against the state an untenable gamble. Under Georgia law, the waiver of sovereign immunity occurs at the time that the action arises, not at the time that the negligent act was committed. *Ethridge v. Price*, 194 Ga. App. 82 (389 SE2d 784) (1989). We now hold that the state may withdraw its waiver of sovereign immunity at any time before a citizen acts in reliance on that waiver by filing suit. A waiver of sovereign immunity is binding on the state with respect to any pending action. *Goolsby*, supra, is disapproved to the extent that it holds otherwise; dictum in *Sikes v. Candler County*, 247 Ga. 115 (274 SE2d 464) (1981) (citing *Goolsby*, supra) will not be followed.

The amendment at issue here became effective on January 1, 1991. This action was filed on June 3, 1988. The waiver of sovereign immunity that existed under the former constitutional provision was in effect at that time and therefore applies.

4. Finally, appellants contend that the trial court erred in transferring the case from Houston County where the accident occurred to Tattnall County, where defendant Durrence resides.

The state argues that the DOT is only a nominal party in this action and that the case should be transferred to the county of the employee defendant who is the real party in interest. We disagree. Insofar as Durrence, the DOT employee sued here, may be sued for

discretionary acts taken within the scope of his duties as an employee of the DOT, he is protected by official immunity. We observed in *Price*:

> The officer or agent or employee is protected by [official] immunity [and] the suit is in reality one against the state. Applying that rationale we hold the claim against the employees of DOT here is in reality a claim against the DOT. The allegations of negligence relate to acts or omissions requiring discretion and judgment. This then is a claim against the state, or more directly its department, DOT.

*Price*, supra at 537. Under the reasoning of *Price*, an action against a DOT employee for discretionary acts or omissions for which the employee is protected by official immunity must be brought as an action against the DOT. The venue statute governing actions against the DOT applies. Pursuant to OCGA § 32-2-5, tort actions against the DOT "shall be brought in the county in which the cause of action arose." This action was properly brought in the county where the action arose. Therefore, this action was improperly transferred to Tattnall County.

In sum, we conclude that the ratification of the 1991 amendment to Art. I, Sec. II, Par. IX of the Georgia Constitution is not invalid for any of the reasons assigned by appellants.[1] Further, the amendment must have prospective effect only and does not act to withdraw any waiver of sovereign immunity for actions pending on January 1, 1991, the amendment's effective date. Finally, the venue of actions against DOT employees for their discretionary acts is governed by OCGA § 32-2-5.

*Judgment reversed. All the Justices concur, except Weltner, P. J., and Benham, J., who dissent; Sears-Collins, J., not participating.*

HUNT, Justice, concurring.

1. The dissenters erroneously focus on whether the voter was deceived by the ballot language as to the *effects* of ratifying the new amendment and in speculating as to those effects. They assume that elimination of the insurance waiver embodied in the old amendment disadvantages citizens injured by state employees and that an in-

---

[1] Appellants do not raise and we do not reach the issue of whether the amendment may conflict with other state or federal constitutional provisions. We have not been asked to reconsider here the continuing authority of *Miree v. United States*, 242 Ga. 126 (249 SE2d 573) (1978), and *Wilmoth v. Henry County*, 251 Ga. 643 (309 SE2d 126) (1983). Appellants further do not raise the issue of whether the amendment may be rendered unconstitutional if the legislature fails to enact the State Tort Claims Act described in the amendment.

formed voter would have voted against the new amendment.[2] The validity of that assumption is questionable given the disputes over the meaning of "insurance" under the old amendment, e.g., *Logue v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990); *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992), and the advantages which may be realized if a tort claims act is finally passed under the new amendment.

The proper focus of this court's inquiry is whether the ballot language, even if deceptive as to the purpose of the amendment, prevented the voter from knowing which amendment he was voting for or against. *Sears v. State*, 232 Ga. 547 (208 SE2d 93) (1974); *Burton v. Georgia*, 953 F2d 1266 (11th Cir. 1992). There is no serious contention that the wording of this ballot was that misleading.

2. I also write to comment on our previous opinions, which result, in Division 3 of this case, in holding that the DOT is a real party in interest. In *Martin v. Dept. of Public Safety*, 257 Ga. 300 (357 SE2d 569) (1987), and in *Price v. Dept. of Transp.*, 257 Ga. 535 (361 SE2d 146) (1987), this court held the self-insurance fund provided by the state to cover its employees waived sovereign immunity under Art. I, Sec. II, Par. IX of the 1983 Constitution. That ruling was dependent on the language of the state self-insurance fund which purported to cover the liability of public officials in their personal and official capacities:

> "This policy covers the following: PERSONAL INJURY, BODILY INJURY, SICKNESS, DISEASE OR DEATH AND PROPERTY DAMAGE caused by or resulting from error, omission or negligence *in the performance of duties within the scope of an insured's employment* with a participating entity that has purchased coverage. . . . [Emphasis in original.] The Fund will pay on behalf of any insured, all sums which the insured shall become legally obligated to pay as damages, court costs and attorney fees, arising out of the performance of or failure to perform *official duties in the insured's capacity as an officer or employee* and caused by the insured. The Fund will also pay on behalf of the insured all such sums within the policy limits arising out of the rendering of or failure to render services by any person for whose acts or failure to act such insured is legally responsible by reason of the insured's position." [Emphasis supplied.]

---

[2] To be an "informed" voter, one would have to read the various amendments, not just the ballot language. In all likelihood, few among the electorate choose to become so informed. Nevertheless, it remains an obligation which is, and should be, placed upon all of us as voters.

*Martin v. Dept. of Public Safety*, supra at pp. 302-303. Because the state had long been authorized to establish a state court of claims, but had not done so, we concluded that the legislature, in proposing the constitutional waiver and in authorizing the self-insurance fund, intended to provide compensation to citizens injured by public employees under all the circumstances set forth in the self-insurance program.

While suits against public employees in their personal capacities involve official immunity, suits against public employees in their official capacities are in reality suits against the state and, therefore, involve sovereign immunity. *Price v. Dept. of Transp.*, supra, 257 Ga. at 537. Thus, it was the inclusion of self-insurance for public officials in their official capacities that resulted in the waiver of the sovereign immunity of the state under the constitutional amendment. As we held in *Price v. Dept. of Transp.*, supra at p. 536, n. 2, the provision in the enabling legislation, OCGA § 45-9-5, attempting nevertheless to preserve immunity, was inconsistent with the constitution and ineffective.

The self-insurance fund at issue in *Martin* and *Price* also covered discretionary acts which otherwise would have been immune under principles of official immunity. Because insurance was provided that covered these acts, we held that the self-insurance fund also waived official immunity. With the waiver of sovereign and official immunity, the DOT was liable for the negligence of its employees under principles of respondeat superior. *Martin v. Dept. of Public Safety*, supra, 257 Ga. at 303.

It follows that because DOT is a real party in interest, venue is proper where the accident occurred under OCGA § 32-2-5.

WELTNER, Presiding Justice, dissenting.

I dissent to Division 1 of the opinion.

1. The ballot language reads:

Shall the Constitution be amended to provide that the General Assembly may authorize lawsuits against the state and its departments, agencies, officers, and employees and to provide how public officers and employees may and may not be held liable in court?

2. This language is affirmatively misleading. It is misleading because our constitution already has authorized "lawsuits against the state and its departments . . ." through the state's action in creating an insurance fund. Art. I, Sec. II, Par. IX of the Constitution of Geor-

gia of 1983;[3] *Martin v. Dept. of Public Safety*, 257 Ga. 300 (357 SE2d 569) (1987); *Price v. Dept. of Transp.*, 257 Ga. 535 (361 SE2d 146) (1987).

3. (a) The 1990 amendment sought to change Art. I, Sec. II, Par. IX by vitiating the existing law (i.e., sovereign immunity is waived by the establishment of insurance coverage), and by providing that sovereign immunity would be waived only by the General Assembly's enactment of a state tort claim act; or possibly by other legislation that "specifically provides that sovereign immunity is thereby waived and the extent of such waiver."[4]

(b) A ratification of the 1990 amendment will accomplish exactly the *opposite* of what the ballot language clearly suggests.[5]

4. (a) Mere ambiguity in ballot language — or imprecision or omission — should not invalidate ratification. Rather, invalidity should follow only from an affirmative misstatement by the ballot language of the effect of the proposed amendment.

(b) It is difficult to imagine a plainer case of affirmative misstate-

---

[3] (a) Sovereign immunity extends to the state and all its departments and agencies. . . . Also the defense of sovereign immunity is waived as to those actions for the recovery of damages for any claim against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided but only to the extent of any liability insurance provided. Moreover, the sovereign immunity of the state or any of its departments and agencies may hereafter be waived further by Act of the General Assembly which specifically provides that sovereign immunity is hereby waived and the extent of the waiver. . . .
(b) The General Assembly may provide by law for the processing and disposition of claims against the state which do not exceed such maximum amount as provided therein. [Id.]
[4] The pertinent language of the proposed amendment is:
(a) The General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of actions or claims against the state and its departments, agencies, officers, and employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide. . . .
(e) Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.
[5] What the General Assembly did in drafting ballot language so contrary to the effect of the proposed amendment evokes remembrance of the opera *Iolanthe*, and of the Lord Chancellor's advice to the Queen:
*Queen*: You have all incurred death; but I can't slaughter the whole company! And yet (unfolding a scroll) the law is clear — every fairy must die who marries a mortal!
*Lord Chancellor*: Allow me, as an old Equity draftsman, to make a suggestion. The subtleties of the legal mind are equal to the emergency. The thing is really quite simple — the insertion of a single word will do. Let it stand that every fairy shall die who doesn't marry a mortal, and there you are, out of your difficulty at once. [*The Complete Plays of Gilbert and Sullivan*, New York: The Modern Library (n.d.), 286.]

ment than this case. Consider:

(i) The voters were asked whether they wanted the right to sue the state.

(ii) The voters answered "yes."

(iii) Because they answered "yes," their existing rights to sue the state have been terminated!

I am authorized to state that Justice Benham joins in this dissent.

DECIDED MARCH 17, 1992.

*Rand & Ezor, Samuel S. Olens, Richard Kopelman, Trunnell & Associates, John W. Trunnell, Jr.,* for appellants.

*Michael J. Bowers, Attorney General, Charles M. Richards, Senior Assistant Attorney General, Eric A. Brewton, Assistant Attorney General,* for appellees.

*Tony Center, William S. Stone, Craig T. Jones, James D. Hollingsworth, William O. Carter,* amici curiae.