A93A0964. GUTHRIE et al. v. IRONS et al.
(439 SE2d 732)

ANDREWS, Judge.

Plaintiffs' 15-year-old son, Derrick Guthrie, a student at Harper High School in Atlanta, died from injuries sustained when Brian Ball, a fellow student, beat and kicked him in a school hallway between classes. This wrongful death action was brought against Ocie J. Irons, the school principal, and Mildred Faucette, a teacher at the school whose classroom was near the site of the attack. The trial court granted summary judgment in favor of both defendants, and plaintiffs appeal.[1]

1. The complaint in this action does not seek to impose vicarious liability on the school system for actions taken by the defendant employees. Rather, the relief sought by the plaintiffs is to hold Irons and Faucette personally liable for the death of Derrick Guthrie. The immunity defense invoked in support of summary judgment by these individual defendants is not sovereign immunity, which protects the public treasury, but official immunity, which protects individual pub-

---

[1] Although the trial court's orders purport to grant each defendant's "motion to dismiss," the parties agree the orders should be treated as orders granting summary judgment since both defendants relied on evidence outside the pleadings.

lic agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice or corruption. *Cooper v. Swofford*, 258 Ga. 143 (368 SE2d 518) (1988); *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980); *Truelove v. Wilson*, 159 Ga. App. 906, 907 (285 SE2d 556) (1981). Official immunity is a form of governmental immunity accorded public officials while acting in discretionary matters as agents for the state, and, as such, is an extension of the state's sovereign immunity to the individual agents of the state through whom the state acts. *Hennessy*, supra at 330-332. The immunity issue presented by this action, filed on December 3, 1990, is governed by the former constitutional provision regarding sovereign immunity applicable to causes of action accruing prior to January 1, 1991, which provided: "[T]he defense of sovereign immunity is waived as to those actions for the recovery of damages for any claim against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided but only to the extent of any liability insurance provided." See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (as this paragraph of the Constitution appeared prior to the 1991 amendment eliminating waiver to the extent of liability insurance); *Curtis v. Board of Regents &c.*, 262 Ga. 226 (416 SE2d 510) (1992).

The plaintiffs contend this action is not barred by official immunity because the individual defendants waived their immunity by purchasing liability insurance through their respective professional associations, covering this claim. It is undisputed that the school board, which employed the defendants, and which in the performance of a governmental function was entitled to the defense of sovereign immunity (*Hennessy*, supra at 329-330), did not provide the defendants with liability insurance. Under the constitutional provision applying to this case the state (or the board of education as the applicable governmental entity), by providing insurance, could choose to waive its own sovereign immunity, or the official immunity of its agents. *Martin v. Ga. Dept. of Public Safety*, 257 Ga. 300, 302-303 (357 SE2d 569) (1987); *Swofford v. Cooper*, 184 Ga. App. 50, 54 (360 SE2d 624) (1987); aff'd 258 Ga. 143 (368 SE2d 518) (1988); *Hennessy*, supra at 329; compare *Loque v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990). However, neither *Martin*, supra, nor *Swofford*, supra, dealt with the issue of whether the official immunity of a governmental agent may be waived by insurance purchased, not by the state on behalf of its employees, but by the individual employee acting in his or her own behalf. Only action taken by the state (or applicable governmental entity) may waive governmental immunity of any kind. See *Hennessy*, supra at 329. Because official immunity is a form of governmental immunity arising from the state's sovereign immunity, it may be waived under the applicable constitutional provision only

where the state provides insurance on behalf of its employees. Moreover, if an employee of a governmental entity is allowed to waive his or her own official immunity by the purchase of private insurance, where a plaintiff seeks to impose vicarious liability on the governmental entity for whom the employee works, this would have the effect of allowing the employee to waive the state's sovereign immunity, to the extent the employee's insurance policy provides coverage for the state's vicarious liability for the actions of the employee. See *Dept. of Human Resources v. Poss*, 263 Ga. 347 (434 SE2d 488) (1993). The purchase of private insurance by these individual defendants, even though it may cover negligence in the performance of their official acts as agents for a governmental entity, was purely a private decision, not an action taken by or on behalf of the governmental entity. Accordingly, the insurance purchased by the defendants did not waive their official immunity. *Parker v. Wynn*, 211 Ga. App. 78 (438 SE2d 147) (1993).

2. In the absence of any waiver of official immunity, the issue remains whether the defendants' acts were discretionary, and therefore protected by official immunity, or ministerial acts not shielded by official immunity. Discretionary acts of government employees acting within the scope of their official authority, and done without wilfulness, malice or corruption, are protected by the doctrine of official immunity. *Hennessy*, supra. "It is a well-established principle that a public official who fails to perform purely ministerial duties required by law is subject to an action for damages by one who is injured by his omission. However, it is equally well-established that where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi-judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision; provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption." (Citation and punctuation omitted.) *Partain v. Maddox*, 131 Ga. App. 778, 781 (206 SE2d 618) (1974). The determination as to whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is made on a case-by-case basis. *Swofford*, supra at 52.

The complained-of actions of both of the defendants were discretionary in nature. Plaintiffs argue that the defendants failed to protect Derrick by properly supervising students and monitoring the hallways. Plaintiffs claim Faucette failed to monitor the hallway outside her classroom during the change in classes. Evidence showed that school policy required teachers to be located in and around their doorways between classes to insure that students arriving in the classrooms took their seats in preparation for class, that other students

moved on to their next class, and to monitor the halls. There was no inflexible rule governing this activity, which obviously required teachers to decide where their attention would be best directed at any particular moment to insure the orderly movement of students to the next class.

Faucette testified she was performing this task during a break between classes. She had moved a short distance down the hall from her classroom to move a group of students along when she heard a "thump" behind her. She turned around and saw Derrick on the hall floor with Ball standing over him kicking him. She immediately yelled at Ball to stop, and ran towards the boys. When she got there Ball stopped his attack, and Derrick got up, but collapsed a few seconds later. Faucette further testified that she had no knowledge of any previous threat made by Ball against Derrick.

In opposition to Faucette's motion for summary judgment, the plaintiffs produced an affidavit and a deposition given by another student at the school, Jason Kent, a friend of Derrick's, who testified that he told Faucette in her class the day before the attack that Ball had threatened to beat up Derrick. He further testified that neither he nor Derrick told anyone else at the school of the threat. Kent stated he saw Ball attack Derrick in the hall between classes outside of Faucette's classroom, and that while the attack proceeded Faucette was just inside her classroom in a position near the door where she had a clear view of the area where the attack occurred in the hall. Kent testified that the attack went on for about two or three minutes, while the two boys were surrounded by a group of people screaming and making comments like "hit him, get up, whatever." According to Kent, after Ball knocked Derrick to the floor with his fist, he repeatedly kicked Derrick in the head and chest with the steel-toed boots he was wearing, causing Derrick's head to violently smash into the adjacent wall. He further stated that because of all the noise of people going to class, "[i]f you were standing around the corner and you just heard all the noise you would think they was just going to class. But if you looked and saw the circle you knew something was happening." Kent did not testify that Faucette saw the attack and ignored it, but that she was not looking in that direction, that "evidently she must not have seen it," and that she did not proceed into the hall until after the attack had stopped, and Derrick got up to walk away. Kent testified he did not attempt to call out to Faucette to draw her attention to what was happening during the attack. Of course, in reviewing the grant of summary judgment in favor of the defendants, we must accept the facts most favorable to the plaintiffs as set forth in Kent's testimony.

As principal of the school, Irons was responsible for supervision of all the students and maintenance of discipline at the school. There

was no evidence that he had any prior knowledge of Ball's threat against Derrick. Irons was not in the area of Faucette's classroom when the attack occurred, nor is there any evidence that he was required to be present in that particular location to help monitor the hall between class changes.

Plaintiffs argue that these duties required the defendants to carry out ministerial acts similar to those considered in *Nelson v. Spalding County*, 249 Ga. 334 (290 SE2d 915) (1982), where the court determined it was the duty of a governmental agent to replace or repair missing or damaged road signs when instructed to do so by others, and that the act of replacing or repairing the signs, which required no exercise of discretion, was ministerial rather than discretionary. According to the plaintiffs, since the school board ultimately creates the policies giving rise to the duties at issue, the defendants simply carry out these duties by ministerial acts requiring no exercise of discretion. The ministerial duty carried out in *Nelson*, supra, is not remotely comparable to the difficult task faced by the school principal and teacher in this case in supervising and controlling the activities of students, especially during a change in classes, when large numbers of students are moving from one location to another.

"A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citations and punctuation omitted.) *Joyce v. Van Arsdale*, 196 Ga. App. 95, 96 (395 SE2d 275) (1990). Both this Court and the Supreme Court have previously held in other factual situations that making decisions requiring the means used to supervise school children is a discretionary function of a school principal. *Lewis v. McDowell*, 194 Ga. App. 429, 431 (390 SE2d 605) (1990); *Hennessy*, supra at 332. The general task imposed on Irons to monitor, supervise, and control the movement of large numbers of students during a change in classes, and the same task imposed on Faucette in the area of her classroom, necessarily required the exercise of some discretion in deciding where their attention should be directed at any particular moment, and what action might be required. See *Hicks v. Walker County School Dist.*, 172 Ga. App. 428, 429-430 (323 SE2d 231) (1984) (school bus driver's actions were discretionary and entitled to official immunity in suit arising out of an assault on a student by fellow students, while riding on a school bus). Under the circumstances presented in this case, the defendants were exercising what amounts to a policing function analogous to the discretionary activities of police officers. See *McDay v. City of Atlanta*, 204 Ga. App. 621 (420 SE2d 75) (1992); *Logue*, supra.

The plaintiffs argue only that Faucette and Irons negligently performed ministerial acts. Plaintiffs do not argue, nor is there evidence to support any claim, that Faucette wilfully ignored the attack, or that either defendant acted wilfully, maliciously, corruptly, or outside the scope of their authority in any manner that would remove official immunity even if their actions were otherwise discretionary. The difficulty of determining whether teachers charged with supervision of many students moving between classes should be held liable for failing to direct their attention in one direction rather than another underscores the conclusion that this is one of many judgment calls made daily by teachers dealing with supervision of students. Even if factual questions may exist as to negligence, the defendants' actions in this case were made in the exercise of a discretionary function, and were shielded by official immunity. In exercising their professional judgment, the defendants should not be deterred or intimidated by the constant threat of personal liability, as long as they act within the scope of their authority, and without wilfulness, malice or corruption. Both defendants were entitled to summary judgment based on official immunity.

*Judgment affirmed. Birdsong, P. J., Beasley, P. J., Johnson and Smith, JJ., concur. Pope, C. J., McMurray, P. J., Cooper and Blackburn, JJ., dissent.*

POPE, Chief Judge, dissenting.

1. In my opinion, defendants are not entitled to summary judgment based on official immunity because their alleged negligence was in a ministerial rather than discretionary capacity. See *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980). State officers or employees may rely on official immunity when they "are sued for acting in areas where they are vested with discretion and empowered to exercise judgment in matters before them." Id. at 330. The record reveals that the school board promulgated a rule mandating that teachers stand in their doorways between classes to monitor the hallways. Nonetheless, evidence in the record supports plaintiffs' allegations that teachers failed to consistently comply with this rule; that defendant Irons failed to enforce it; and that defendant Faucette was not monitoring the hall from her doorway at the time of the incident resulting in the death of plaintiffs' son. The complained of act — failure to monitor the hallways between classes — was not one which was within the discretion of either defendant. The school board made the decision and took away from defendants the power to exercise their judgment to the contrary. The board's decision to make the rule was discretionary; the defendants' alleged failure to enforce and comply with the rule must be characterized as ministerial. See *Swofford v. Cooper*, 184 Ga. App. 50, 52 (1) (360 SE2d 624) (1987), aff'd *Cooper v. Swofford*,

258 Ga. 143 (368 SE2d 518) (1988) ("Under this standard it makes no difference that the official is required to perform discretionary acts if the complained-of act is more properly characterized as ministerial.")

2. Because I conclude that defendants were not entitled to summary judgment based on official immunity, I must address defendants' alternative argument that summary judgment was properly granted because plaintiffs presented no evidence that Derrick's death was proximately caused by any breach of duty on their part.

Those who undertake to educate a child assume a duty to exercise ordinary care for the student's safety. See *Marques v. Riverside Military Academy*, 87 Ga. App. 370 (73 SE2d 574) (1952). The pertinent analysis is similar to that applied in premises liability cases: the educator may be liable for failure to abate a dangerous condition if it appears, with due regard for the student's age and ability to control his movements and actions, that the educator is in a better position than the student to know of the danger and abate or ameliorate it. See *Watts v. Wayne County Bd. of Ed.*, 201 Ga. App. 777 (412 SE2d 541) (1991); *Cooper v. Baldwin County School Dist.*, 193 Ga. App. 13 (1) (386 SE2d 896) (1989). The educator's knowledge of the dangerous condition may be shown by evidence of prior, substantially similar incidents. *Cooper*, 193 Ga. App. at 14. Even if knowledge on the part of the educator is shown, however, the educator will not be liable if the injured party set into motion the chain of events leading to his injuries. See *Sapp v. Effingham County Bd. of Ed.*, 200 Ga. App. 695 (1) (409 SE2d 89) (1991).

Viewing the evidence in the light most favorable to plaintiffs, it appears that in the two years prior to this incident, the police had been called to Harper High School forty-eight times. The record contains numerous police reports reflecting fighting and assaults in the school hallways, as well as almost 100 pages of transfer requests from parents fearing for their children's safety. Almost all of these requests were denied. Indeed, Derrick's mother had made such a request not long before his death, although it is undisputed that neither defendant saw it. The situation was bad enough that the school board established a rule requiring teachers to stand in their doorways to monitor the halls between classes. Yet there is evidence that this rule was not consistently followed or enforced.

Several days before Derrick was killed, Ball threatened him after Ball's girl friend accused Derrick of attempting to rape her. Derrick's friend Kent and Ball were both in Faucette's third period chorus class, and when Ball was absent from chorus class the day before the killing, Kent explained Ball's absence by telling Faucette that Ball had threatened to beat up Derrick and was probably out looking for him. Then, in the break between second and third period classes the following day, Ball carried out his threat by beating and kicking Der-

rick in the hallway outside Faucette's classroom, inflicting the injuries which resulted in his death. Despite the rule requiring teachers to stand in their doorways and monitor the halls between classes, there is evidence from Derrick's friend Kent that Faucette was not in her doorway on the day Ball killed Derrick and did not emerge from her classroom until the beating was over.

Unlike the plaintiffs in *Watts* and *Cooper*, plaintiffs in this case presented evidence showing that Irons knew or should have known that the school hallways were dangerous. See, e.g., *Burdine v. Linquist*, 177 Ga. App. 545 (340 SE2d 198) (1986). And even if Faucette was not aware of the police reports and transfer requests showing the dangerous nature of the hallways as a general matter, Kent notified her of the specific danger to Derrick posed by Ball the day before the incident. Accordingly, a jury could conclude that defendants were in a better position than Derrick to know of the danger in the hallways and act to ameliorate it, and that they nonetheless failed to do so. There is evidence in the record suggesting that Derrick did not need to be in the area of the chorus classroom, that he knew Ball would be there and that he set in motion the chain of events leading to his tragic death by purposefully choosing to go there and confront Ball. If so, defendants would not be liable under *Sapp*. See 200 Ga. App. at 696. As the record does not demand this conclusion, however, summary judgment was not warranted on this ground.

Defendants further argue that even if they were negligent, Ball's intervening criminal act cuts off their liability because it rather than their negligence proximately caused Derrick's death. However, the rule that the intervening criminal act of a third party cuts off a defendant's liability applies only where the intervening criminal act is unforeseeable; it "is not applicable where the defendant has reasonable grounds for apprehending that such a criminal act will be committed. [Cit.]" *Tolbert v. Tanner*, 180 Ga. App. 441, 444 (2b) (349 SE2d 463) (1986); accord *Confetti Atlanta, Ltd. v. Gray*, 202 Ga. App. 241 (1) (414 SE2d 265) (1991); *MARTA v. Allen*, 188 Ga. App. 902 (1) (374 SE2d 761) (1988). In other words, the duty to provide safe conditions includes the duty to guard against criminal acts if those criminal acts are reasonably foreseeable. In this case, the known danger defendants failed to ameliorate was the danger of illegal acts such as assaults in the hallways. Thus, the evidence showing that the dangerous condition was known also shows that Ball's intervening illegal act was reasonably foreseeable. For these reasons, I would conclude that questions of fact exist regarding whether Derrick's death was proximately caused by a breach of duty on defendants' part and would reverse the trial court's grant of summary judgment.

I am authorized to state that Presiding Judge McMurray, Judge Cooper and Judge Blackburn join in this dissent.

DECIDED DECEMBER 3, 1993 —
RECONSIDERATION DENIED DECEMBER 20, 1993 —

*Neely & Player, David C. Marshall, Laura A. Shaw, Roberts & Isaf, Lawrence E. Newlin,* for appellants.
*Smith, Howard & Ajax, Warren C. Fortson, Julie J. Weatherly,* for appellees.